THE BYRAM LUMBER AND SUPPLY COMPANY *vs.* MARY ZEHNDER PAGE ET AL.

Third Judicial District, Bridgeport, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued April 12th—decided May 21st, 1929.

258

*Henry E. Shannon* and *W. Braxton Dew*, of Wythe-ville, Virginia, for the appellant (defendant The Aetna Casualty and Surety Company).

*Raymond E. Hackett,* with whom was *John D. Walker,* for the appellee (plaintiff).

MALTBIE, J.   George H. Warhurst, Incorporated, was general contractor for the construction of a dwelling at Greenwich for one of the defendants in this action, Mary Zehnder Page.   On July 12th, 1927, the Warhurst corporation as principal and the defendant surety company as surety executed a bond in favor of the defendant Page to assure the performance of the provisions of the contract.   The condition of this bond runs as follows: "NOW THEREFORE, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

Subsequent to the execution of the bond the plaintiff entered into a contract with the Warhurst corporation to furnish materials for the building and thereafter did

furnish such materials to a considerable amount. Before the plaintiff entered into its contract with the Warhurst corporation it was informed that there was a bond on the job, but it never saw the bond or knew its terms. On October 1st, 1927, the Warhurst corporation abandoned its contract and the defendant Page thereafter completed it, at a cost in excess of the contract price, and was reimbursed by the defendant surety company for this excess cost. The plaintiff has not been paid for the materials it furnished. It duly notified the defendant Page of its intention to claim a mechanic's lien upon the premises and did lodge with the town clerk at Greenwich a proper certificate of lien. By its complaint in this action it seeks in its first count a foreclosure of this lien, but the trial court's conclusion that nothing was secured by the lien stands unquestioned, and this count may be disregarded. In the second count it seeks to recover the value of the materials furnished by it from the defendant surety company, relying upon the condition of the bond we have quoted and particularly upon the clause reading as follows: "and shall pay all persons who have contracts directly with the principal for labor or materials." From a judgment in favor of the plaintiff the surety company has appealed.

In *Baurer* v. *Devenis,* 99 Conn. 203, 121 Atl. 566, we re-examined our prior decisions upon the subject and definitely settled it as the law of this State that a third party for whose benefit a provision has been inserted in a contract may sue thereon. See also *Dresser & Co., Inc.* v. *Insurance Companies,* 101 Conn. 626, 646, 126 Atl. 912; *Tuttle* v. *Jockmus,* 106 Conn. 683, 693, 138 Atl. 804; *Levy* v. *Daniels U-Drive Auto Renting Co., Inc.,* 108 Conn. 333, 338, 143 Atl. 163. In *Baurer* v. *Devenis* we recognized that the intent which must exist on the part of the parties to the contract in order

to permit the third party to sue was not a desire or purpose to confer a particular benefit upon him, but an intent that the promisor should assume a direct obligation to him. Thus we said (p. 212) : "If the parties to the contract did intend to confer upon the third person a right against the promisor, or the promisor intended by such agreement to assume a legal obligation to the third person, these would be indicative of the intent of the parties to benefit the third person. Where the third person knew of the agreement of the promisor, or under the contract he was to be informed of it, it must be found that the parties to the contract did intend to benefit him." That it is in this sense of an intent to creat a direct obligation to the third party that we spoke of the intended benefit to him, rather than in the sense of a desire to advance his interests becomes apparent when we consider our decision in the *Daniels* case, *supra;* for there, having held that the provisions of a statute making any person renting or leasing a motor vehicle to another liable for the damage caused by it became a part of the contract of hiring, we upheld the right of an injured person to sue upon the ground that the provision so read into the contract was one for his benefit within the rule we are considering; and surely it would be a far cry to attribute to the person leasing the motor vehicle a purpose or desire to confer a benefit upon one injured by its operation. This view accords with that adopted by the American Law Institute where the right of a donee beneficiary to enforce a provision in a contract is recognized "if it appears from the terms of the promise in view of the surrounding circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor sup-

posed or asserted to be due from the promisee to the beneficiary." Amer. Law Inst. Restatement, Contracts, §§ 133, 135. The Institute also states, in accordance with our ruling in the *Daniels* case, *supra,* that the beneficiary need not be identified at the time the promise is made. Amer. Law Inst. Restatement, Contracts, § 139.

The question then is, does it appear from the terms of the bond viewed in the light of surrounding circumstances that the purpose of the promisee, that is, the defendant Page, was to bestow upon those who had or should thereafter have contracts directly with the Warhurst corporation for labor and materials to be used in the construction of the building a right to proceed directly against the surety upon the bond. In the first place we attach little significance to the fact that the provision here in question is stated in the "condition" of a bond. "An enforceable agreement may be contained in that part of a bond called the condition." *New Britain* v. *New Britain Telephone Co.,* 74 Conn. 326, 329, 50 Atl. 881, 1015. Of a provision contained in the condition of a bond we said in *Tomlinson* v. *Ousatonic Water Co.,* 44 Conn. 99, 104: "We think that, taking into consideration the relation of the parties, and the surrounding circumstances to which we have alluded, this clause was intended to create and did create an independent original obligation on the part of the defendants; that is, independent of the rest of the instrument, and original, inasmuch as an obligation of this character had not been previously entered into in writing." If then the provision in the bond we are considering was intended to create an enforceable obligation in those occupying such a relation as did the plaintiff to the principal contractor, that it is contained in the condi-

tion is not of consequence. See Corbin, 38 Yale Law Journal, pp. 9, 13.

The question of the right of subcontractors, materialmen and workmen to recover against the surety in bonds of the general nature of the one before us has been the subject-matter of considerable litigation and different conclusions have been reached. Typical cases in which a recovery has been allowed are: *Algonite Stone Mfg. Co.* v. *Fidelity & Deposit Co.,* 100 Kan. 28, 163 Pac. 1976; *Knight & Jillson Co.* v. *Castle,* 172 Ind. 97, 87 N.E. 976; *Gastonia* v. *McEntee-Peterson Engineering Co.,* 131 N.C. 363, 42 S.E. 858; *Hipwell* v. *National Surety Co.,* 130 Iowa, 656, 105 N.W. 318; *R. Connor Co.* v. *Aetna Indemnity Co.,* 136 Wis. 13, 115 N.W. 811; *Concrete Steel Co.* v. *Illinois Surety Co.,* 163 Wis. 41, 157 N.W. 543. Among the decisions denying the right of recovery the following may be noted: *Fosmire* v. *National Surety Co.,* 229 N.Y. 44, 127 N. E. 472; *Standard Gas Power Corporation* v. *New England Casualty Co.,* 90 N.J.L. 570, 101 Atl. 281; *Greene County* v. *Southern Surety Co.,* 292 Pa. St. 304, 141 Atl. 27; *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard,* 89 Ohio St. 185, 106 N.E. 9; *Uhrich v. Globe Surety Co.,* 191 Mo.App. 111, 166 S.W. 845. Other cases will be found cited in the notes, 27 L.R.A. (N.S.) 573; L.R.A. 1915A, 768; and as présented in cases involving bonds to secure the performance of public work, many decisions will be found in *Southwestern Portland Cement Co.* v. *Williams,* 32 New Mexico, 68, 251 Pac. 380, and in the note to that decision, 49 A.L.R. 534. The subject has been recently discussed in a very illuminating way by Professor Corbin. 38 Yale Law Journal, 1. The only case we have come upon in which the precise condition before us has been construed is *Hartford Accident & Indemnity Co.* v. *W. & J. Knox Net & Twine Co.,* 150 Md. 40, 132 Atl.

261, where the right of recovery by a subcontractor was sustained, two judges dissenting.

The jurisdictions where the right to recover has been recognized are apparently considerably more numerous than those where the right has been denied. Inasmuch as most of the jurisdictions passing upon the question now recognize, with greater or less liberality, the right of a third party beneficiary to sue, the question usually presented is, whether from the terms of the particular instrument before the court, read in the light of the surrounding circumstances, an intent to confer upon the plaintiff a right to proceed directly against the promisors in the bond can be discerned. As the instruments before the courts have differed widely in their terms, the various decisions must for the most part be regarded rather as aids to reasoning than as precedents. This is particularly true of the decisions in certain jurisdictions where there are statutes bearing directly upon the matter. Moreover, there are two other situations rather sharply to be distinguished. Undoubtedly the tendency has been stronger to uphold the right of action in the case of contracts with municipalities or other public agencies, because of the greater likelihood that in the making of such contracts regard would be paid to the interests of those who might furnish labor or materials, and to the broader considerations arising out of the policy of assuring them a more secure basis for entering upon the work. Again, the right of subcontractors or materialmen to come directly upon the property being improved by way of lien has frequently been regarded as furnishing a reason for attributing to the owner an intention to afford them a direct right of recovery.

If we turn to the particular bond before us we find that after referring to the agreement it states as the conditions upon the fulfilment of which it is to be void:

faithful performance of the contract by the principal contractor, satisfaction of all claims and demands incurred for the same, full indemnity to the owner for all costs and damages by reason of the failure to keep these stipulations, and reimbursement of the owner for all expense in making good any such default, and then the provision upon which reliance is placed in this case, that the principal contractor "shall pay all persons who have contracts directly with the principal for labor or materials." In the first place it is at once apparent that the clause quoted adds nothing to the obligations before stated as regards the right of the owner to recover upon the bond; if any person furnishing labor or materials under contract with the principal in the bond had a claim against the owner, it would be the duty of the obligors under the stipulations preceding the one quoted to satisfy it, or, if the owner had paid the claim, to reimburse him. Every provision in a contract is to be given effect if it can reasonably be done, for parties do not ordinarily insert meaningless terms; *Eastern Bridge & Structural Co.* v. *Curtis Building Co.*, 89 Conn. 571, 575, 94 Atl. 921; and that would be particularly true of such an instrument as the one before us, wherein a corporation engaged in the business of issuing bonds assumes for a premium responsibility for the defaults of a building contractor. Again, there is significance in the fact that in the particular clause here in question those "who have contracts directly with the principal" are singled out for special regard; if protection for the owner alone was in the minds of the parties it is difficult to see why this should be done; his concern would be to guard against all claims of whatsoever nature which might be made upon him, without regard to the way in which they had arisen, while this clause is made to turn upon a direct contractual relationship

with the principal. If it be suggested that the purpose was to make doubly sure the protection of the owner against such subcontractors as might file liens upon the property, it is to be noted that the provision is not broad enough to include all those who, aside from the general contractor, may have liens under our law; for the right is extended to those who may furnish labor or materials by agreement with a subcontractor. General Statutes, § 5219. Nor can we in considering the terms of the bond shut our eyes to the fact that it is in the form adopted by the American Institute of Architects and approved by various national organizations of contractors; Blake on Architecture & Building (2d Ed.) p. 317; so that, had the intent been to protect the owner against subcontractors who might file liens some language would naturally have been used which would have been adequate to meet the demands of the varying statutes in the different States. Protection to the owner is not an adequate explanation for the insertion of the clause we are considering.

On the other hand, all persons who have contracts directly with the principal contractor for furnishing labor or materials for a building have under our law a right to file a lien, and so to impose a charge upon the owner. General Statutes, § 5219. It is therefore decidedly to his interest that such persons should have a direct right of recovery upon a bond such as this, rather than to have a situation where the immediate obligation is to him and they could work out their rights only through him. The avoidance of such circuity of action is certainly for the benefit of the owner. Moreover, if we adopt the view that the purpose of the provision was to give rise to a direct obligation to subcontractors, a reason for the restriction of the provision to those who have directly contracted with the

principal appears; by reason of such a contract they would have a right of action against him, and the effect of the bond would be merely to extend that right as against the surety; this might seem a reasonable provision whereas the parties might hesitate to create entirely new rights of action against the principal contractor and extend those to include the surety.

As we have pointed out, this form of a bond has been adopted by the American Institute of Architects for general use, a fact which this large surety company now appealing surely knew, as witness its reference to the matter in its brief. In considering the terms of such an instrument, chosen by such a body, one would expect to find in them a regard for the interest of the public and the trade in the carrying on of building operations and certainly that would be served by extending to those having contracts to furnish labor or materials with a principal contractor the additional security which would be afforded by the protection of a bond. As a paid surety the appellant is not entitled to the benefit of the rule of construction which favors volunteer sureties. *New Haven* v. *Eastern Paving Brick Co.*, 78 Conn. 689, 702, 63 Atl. 517. It would be to close our eyes to the ordinary methods of such a business as it was conducting to doubt that it knew of the diverse views taken in regard to the construction of such bonds in different States, that it did not stand ready to accept a construction favorable to a direct action by persons situated like the plaintiff if we should so construe the bond, and did not fix its premium accordingly. In that construction there can be no injustice to the appellant and we can recognize the sound policy which it will serve.

It is said that if the subcontractors on default of the contractor in its obligation to them may proceed

upon the bond the security of the owner may be impaired by the depletion or exhaustion of the penal sum, to his possible loss in the event of a default in the contractor's obligation to him. We should hesitate to adopt a construction of a bond which would militate against any rights the owner might claim under it, but it is obvious that the difficulty here pointed out does not concern his rights but only the danger that the penal sum may prove too low to meet all obligations arising on the bond. This danger does no doubt exist as a possibility, but it does not seem to us that it is sufficiently likely to be entitled to great weight in determining what the intent of the parties was when the bond was executed. Ordinarily, as far as constituting a charge upon the amount of the bond is concerned, it would not matter whether sums due subcontractors were, on default of the principal contractor, paid to them as a direct result of a provision in the bond, or in order to discharge the obligation to the owner to settle claims and demands against him and to save him harmless from liens which might be filed. It seems to us that it would be a rare case where the defaults by the contractor were of so serious a nature as to exhaust the entire penal sum stated in the bond. Moreover, this argument seems to us rather to beg the question; for if the parties, as we hold, intended to create a direct obligation to subcontractors, then we must assume that they fixed the amount of the bond accordingly; and it is only by assuming that they did not intend to create such an obligation that danger of loss to the owner from recognizing it would become material. At any rate, such weight as this argument may have, seems to us insufficient to overcome the contrary considerations we have suggested.

Our conclusion is that the plaintiff was entitled to recover upon the bond.

There is no error.

In this opinion the other judges concurred.