846

CLOUTIER v. MORGENTHAU.
No. 6685.

United States Court of Appeals for the District of Columbia.

Argued Dec. 9, 1936.
Decided Jan. 4, 1937.

Julian G. Straus, of Washington, D. C., and Louis Halle, of New York City, for appellant.

Leslie C. Garnett, U. S. Atty., and Cecil R. Heflin, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, and GRONER, JJ.

GRONER, J.

This is a petition for mandamus. Appellant—in October-November, 1918—was a machinist in the employ of the Minneapolis Steel & Machinery Company. The company had contracts with the United States for the manufacture of war materials for use in the World War. At that time of national peril there were demands on the part of employees of this and other contracting companies for adjustment of wages, and there were threats of strikes. To meet the situation, the President by Executive Order created the War Labor Board with power to settle "by mediation and conciliation controversies arising between the employer and workers in fields of production necessary for the effective conduct of the War," etc. The Board had hearings and ultimately classified the employees and increased their pay, but the corporations by which they were employed refused to recognize the new rates as applicable to back wages—as the result of which the employees made claim against the government for payment of the adjusted amounts. Congress then passed the Dent Act (40 Stat. 1272, amended 42 Stat. 322, 50 U.S.C.A. § 80 note). The first four sections relate to and authorize the discharge by the Secretary of War of any agreement, express or implied, entered into during the emergency occasioned by the World War with any person "for services * * * or other purposes connected with the prosecution of the war." Section 1.

Appellant claims the sum of $248.96, with interest from November 24, 1920, and we are told that his case is typical of 4,000 employees with claims aggregating close to a million dollars. Appellant's petition alleges that an award was made to him for his services in accordance with the classification and rate of wage fixed by the Board; that his claim was approved by the Board and by the Secretary of War; that he has not been paid; and that under the provisions of the Dent Act he is entitled to have payment made by the Secretary of the Treasury.

There is no denial that appellant's claim is within the terms and intent of the provisions of the Dent Act, and therefore the only questions we have to decide are whether the act clearly imposes on the Secretary of the Treasury the peremptory duty to make payment, and—if it does—whether Congress has appropriated the money for

that purpose. We think both questions should be answered in the negative.

The first section of the Act provides:

"That the Secretary of War be, and he is hereby, authorized to adjust, pay, or discharge any agreement, express or implied * * * for services * * * connected with the prosecution of the war," etc.

But there is no provision in the act authorizing or directing the Secretary of the Treasury to make payment or to do any other act or thing in connection with carrying out its purposes, and there is no special fund appropriated by the act for the payment of the claims recognized by the Secretary of War, though by section 5 (as amended by Act Nov. 23, 1921, 42 Stat. 322), authorizing the Secretary of Interior to adjust claims arising out of the production of manganese, etc., $8,500,000 is set up as a revolving fund for that specific purpose. By a later act (Act of June 5, 1920, 41 Stat. 1026) Congress, however, did authorize the use until June 30, 1921, of certain unexpended War Department appropriations for the fiscal year 1918 to permit payments under the Dent Act approved by the Secretary of War. But that reservoir is now closed.

Section 2 of the act confers jurisdiction on the Court of Claims to review the action of the Secretary of War in the event of disagreement between him and the individual involved. The petition does not inform us whether appellant accepted the award approved by the Secretary of War, but we assume he did and that, therefore, he is in the position of having a claim which has been approved, as we have seen, by the different boards and by the Secretary and accepted by himself. And in that aspect he insists that payment should be made out of the general fund and that it is the duty of the Secretary of the Treasury to make payment accordingly and in this respect that the Secretary has no discretion. Appellant relies upon the case of T. A. Gillespie Co. v. U. S., 60 Ct.Cl: 923. Gillespie had a contract with the United States growing out of the prosecution of the war for which an award was made and paid. For a claim growing out of a supplemental contract, an additional claim was made and allowed, and the Secretary of War issued vouchers for payment. The "finance officer of the government" refused payment, and Gillespie sued the United States upon the award. The Court of Claims sustained jurisdiction either, first, upon a law of Congress—the Dent Act—or, second, upon the award and acceptance as amounting to a contract with the government. The language of the opinion on which appellant relies is this:

"And it may be said that the award and acceptance do not stand alone. The act authorized the Secretary not only to 'adjust,' an action indicated by his award and its acceptance, but also to 'pay.' This meant, of course, by the usual method; not from cash in the hands of the Secretary, but by the issuance of proper vouchers to be paid by those charged with that duty.

"We need not consider whether the plaintiff might have sought a mandate to enforce the performance of a ministerial duty. That is an extraordinary remedy, and the plaintiff has seen fit to seek a legal remedy by way of judgment at the hands of this court. To this we think it entitled and have so ordered."

■ We are not told but assume that the judgment of the Court of Claims was paid from a subsequent congressional appropriation for that purpose. But appellant says that payment "by the usual method," which the Court of Claims said is the appropriate way of discharging the liability, means payment by the Secretary of the Treasury. The Secretary says that in a matter involving the War Department payment "by the usual method" is by the duly authorized disbursing officer of that Department. There is such an officer—created by Act of Congress (10 U.S.C.A. §§ 171-176). He is called the Chief of Finance and is "charged with the disbursement of all funds of the War Department." However, there is nothing in the record from which we are able to determine the method adopted by that officer in the disbursement of War Department funds, nor do we think the question material. Appellant does not point to nor can we find any statute or regulation from which we are able to say that the duty in the circumstances we have here inheres in the office of Secretary of the Treasury. The Dent Act does not impose it, and so at best, from the point of view of appellant, the matter is left in doubt. And nothing is better settled than that a claimed duty of this nature cannot be enforced by mandamus unless it is perfectly clear. United States ex rel. Chicago, etc., R. Co. v. Interstate Commerce Comm., 294 U.S. 50, 63, 55 S.Ct. 326, 79 L.Ed. 752.

And the doubt which we have just expressed is strengthened, rather than weakened, by the fact, as we have seen, that Congress as far back as 1920 (41 Stat. 1026) set aside an unexpended fund, previously appropriated to the War Department, and then amounting to fifty-one million odd dollars, to permit payments by the Secretary of War to those persons to whom he had made an award; and followed this by a similar act in a subsequent session (42 Stat. 63); and by later acts (42 Stat. 778; 42 Stat. 1550) withdrew this authorization and turned over this balance to the payment of claims of foreign governments and their nationals for supplies or services furnished for the use of American forces abroad. In 1925 (43 Stat. 1603) Congress appropriated to the Secretary of War $1,-600,000 for the express purpose of discharging claims of machine shop workers of Bethlehem Steel Company for war-time work like that in which appellant was engaged, and it is averred in the answer and admitted in the reply that a bill to cover the case of the employees of the Minneapolis Company (appellant's employer) was introduced in the 74th Congress but failed of passage.

■ All of these circumstances would indicate, we think, that Congress did not intend or provide that payment to appellant should be made by the Secretary of the Treasury. In this view we should be going very far to say that there is a mandatory duty on the Secretary to pay appellant's claim.

■ But even if we are in error in so holding, we should have to deny the petition for the further insuperable reason that Congress has appropriated no fund out of which payment can now be made by either Secretary. And certainly nothing is better established than the proposition that the Treasury is not empowered to pay claims against the United States or debts of the United States—in whatever form they may be—out of funds of the United States, until an appropriation is made by Congress for that express purpose. "* * * without such an appropriation it cannot and should not be paid by the Treasury, whether the claim is by a verdict or judgment, or without either, and no mandamus or other remedy lies against any officer of the Treasury Department, in a case situated like this, where no appropriation to pay it has been made." Reeside v. Walker, 11 How. 272, 291, 13 L.Ed. 693.

We have had occasion to announce the same doctrine in a number of cases, one as recently as last spring. Cf. Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 85 F.(2d) 677, certiorari denied November 9, 1936, 57 S.Ct. 118, 81 L.Ed. ——.

To say more would be repetition, and accordingly we affirm the judgment of the court below.

Affirmed.