### UNITED STATES v. HUFF.

### SAME v. BLAND.

### SAME v. ARLEDGE et al.

### SAME v. ARLEDGE.
### Nos. 11811–11814.

Circuit Court of Appeals, Fifth Circuit.
Jan. 13, 1948.

HUTCHESON, Circuit Judge, dissenting.

722

A. W. Christian, Asst. U. S. Atty., of Fort Worth, Tex., for appellant the United States.

John Sayles, Jack Sayles, and Dallas Scarborough, all of Abilene, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The owners of adjacent tracts of land near Camp Barkeley, in Taylor County, Texas, executed leases covering the lands to three named trustees in order to permit the trustees to make a blanket lease of all the tracts to the federal Government for use as the site of an Army training and maneuver camp and an artillery firing and target range. The trustees executed a blanket lease dated January 2, 1941, to expire July 1, 1943. The appellees, plaintiffs below, in causes No. 11,811, No. 11,812, and No. 11,814 were the tenants, and in cause No. 11,813, the heirs of the deceased tenant, of the tracts of land included in the blanket lease. At the time of the execution of the blanket lease these tenants were using and occupying the different tracts for the purpose of raising sheep and goats and were permitted to continue such use and occupancy during the term of the lease. The complaint in each case alleges that the acts of the Government or its agents and employees, particularly set forth in the petition, constituted negligence which caused loss of and damage to sheep and goats on the premises described in each complaint.

The complaints were brought under 28 U.S. C.A. § 41(20), known as the Tucker Act. The portion of the act here applicable reads as follows:

"The district courts shall have original jurisdiction as follows:

\* \* \* \* \* \*

"Suits against United States. Twentieth. Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, \* \* \*."

The defendant below, appellant here, moved to dismiss on three grounds: (1) That the court was without jurisdiction for the reason that the causes of action were for damages in cases sounding in tort, and not founded upon contract, the plaintiffs not being parties to the contract of lease under which the Government was in possession of the property; (2) that a remedy was afforded by Congress by 31 U.S.C.A. § 223b, Act July 3, 1943, § 1, 57 Stat. 372, providing for a consideration by the Secretary of War, or an official designated by him, of claims for damages caused by military personnel, and that said remedy was exclusive or, if not exclusive, to be pursued prior to filing suit for such damages; (3) that in the two Arledge cases the court was without jurisdiction because the two claims asserted were in realty the single claim of a partnership and were, therefore, for an amount in excess of $10,000.

The four cases were tried together, and at the conclusion of the testimony motions to dismiss were again filed on the same grounds and upon the following additional grounds, viz: (1) The evidence failed to establish any acts of negligence on the part of the Government, its agents, or employees. (2) The evidence failed to show damages with a reasonable degree of certainty or to establish the measure of dam-

agcs. (3) Plaintiffs remaining on the land and keeping their livestock thereon after the leases to the Government for military purposes assumed the risk of damages reasonably incident to the use of the land for military purposes. These motions were likewise overruled, and judgment was rendered against the Government and for the plaintiffs in each case.

The record shows that the original petitions were for amounts exceeding $10,000. The defendant filed a motion to dismiss on the ground of no jurisdiction, and the plaintiff then filed and served a new petition termed an amended complaint. In this amended complaint, plaintiffs set forth anew all allegations of the original petition and alleged anew with full particulars their causes of action for damages in amounts in sum less than $10,000. By this action they abandoned their original suits and filed their claims under a petition in which the jurisdictional amount was within the coverage of the Tucker Act.

The appellees Arledge, Jr., and Arledge, Sr., signed a contract with the trustees from which it might be inferred that they were one concern, a partnership. But we agree with the lower court that the greater weight of the evidence is to the effect that they were operating separate and distinct business enterprises. This being so, each must be held to have filed a separate action for less than $10,000.

■ Appellant contends that the appellees not being parties to the lease cannot sue upon the contract. We think the lease was drawn with the double purpose of benefiting both the owners of the lands in question and their tenants, appellees. Paragraphs 12 and 13 of the lease read as follows:

"12. The Government will not be liable during the life of this lease, or any renewal thereof, for the loss of, or damage of any nature to livestock that may be on said premises, save and except the loss of, or damage to, said livestock due to negligence on the part of the Government or its agents or employees.

"13. The Government shall have the right, during the existence of this lease, to let down any wire on the now existing **wire** fences, with the understanding that following the crossing of said fences by the troops, the Government will restaple the said wire to the posts, and leave the fence in as good condition and repair as it was at the time of entry upon the leased premises by the Government."

The record shows that the only livestock on the leased premises was livestock belonging to the tenants, appellees. Clearly, therefore, paragraph 12 must be held to have been drawn with rights of the tenants in the minds of the contracting parties. Patently paragraph 13 protects both the owners' property in the fences and the tenants' interest in keeping their livestock enclosed to prevent straying. If the owners' property interest in the fences were the only, or even the primary, interest to be protected, it could have been protected merely by an agreement on the part of the Government to replace or pay for removed fences at the termination of the lease. But the paragraph in question provides for replacement of the fences *following the passage of the troops,* and we think the inescapable conclusion must be that the agreement was intended by the parties also to benefit the tenants in their business of raising livestock. This conclusion is fortified by the fact that the Government expressly agreed that during the term of the lease, the tenants in possession might remain upon the lands and continue in business. Further, the agreement permitting the owners of the lands to execute a lease to the Government provided that: "It being understood that such lease contract as first parties [owners] make with the Government of the United States will contain a provision to the effect that notification of the proposed use of the artillery firing area and the artillery target area will be given second parties [tenants] at least five days before said areas are so used." In the Government lease, the provision reads that "notice shall be given to the lessor," that is, to the owner; but the evidence shows that the notice was in actual fact given, when it was given, to the tenants, appellees here. It is evident that at least in these quoted paragraphs and clauses the Government lease is charged with obligation toward the tenants, that they are third--

party beneficiaries of the contract, and that, therefore, they may sue upon it. Williston on Contracts, § 356A; Restatement of the Law of Contracts, § 133.[1]

■ The Government contends that even if appellees are beneficiaries of the contract, they have no case since paragraphs 12 and 13 must be taken together. In them, it is said, the Government expressly limits its liability to liability for loss or damages caused by negligence, and for such damages an action will not lie under the Tucker Act. The answer to that is that if paragraphs 12 and 13 are read together, they contradict each other by necessary implication. Paragraph 12 denies liability in connexion with livestock for loss or damage *of any nature* except that due to negligence, while, immediately following, paragraph 13 contracts implicitly to protect livestock. This contradiction would not exist but for the phrase in paragraph 13 "following the crossing of the fences by the troops." Without that phrase, no time element would have been injected, and, therefore, no implication would arise of any intent to contract with respect to anything other than the fences themselves. It is the time element that demands the interpretation we have put upon paragraph 13, that protection of livestock as well as of the actual fencing was within the contemplation of the parties.

We think that to avoid the contradiction referred to, paragraph 12 insofar as it denies liability must be narrowly construed to refer only to ordinary and reasonably foreseeable loss or damage resulting from the contemplated use of the lands by the Army, such loss or damage, that is, as actually was occasioned by the pollution of the water, or as might have been caused by Army equipment unavoidably running over and killing the animals; such loss or damage would be due neither to negligence nor to breach of the contract in paragraph 13. The phrase in paragraph 12 "save and except the loss of, or damage to, said livestock due to negligence" is an excepting clause which merely preserves to the tenants their rights against the Government and refers to negligence independent of the contract for which an action could not be maintained under the Tucker Act and for which recovery could be had only on a claim made to the Secretary of War and through him to Congress. 31 U.S.C.A. § 223b, repealed Aug. 2, 1946, c. 753, Title IV, sec. 424 (a), 60 Stat. 846. We do not think it can fairly be taken to mean a denial of liability under the contract in the next paragraph in the lease, paragraph 13, set forth above.

Recovery for loss or damage to livestock occasioned by the breach of contract may be based upon either of two theories: (1) In the light of events as they transpired, the Government's failure to fulfill the contract constituted simply the breach of an express contract to maintain the fences; or (2) the failure to repair the fences following passage of the troops constituted an unreasonable omission to act, in which case it was a tortious breach of contract. In either case, the Government is liable for the damages reasonably flowing from the breach.

■■ To proceed upon the first theory, it is probably true as the lower court pointed out, that the lease created an impossible situation. Clearly, it must have been supposed by all the parties that use of the lands by the Government as a maneuver area would be entirely compatible with continued use of the same lands by the appellees as livestock ranges. That supposition was proved erroneous. The evidence shows that fulfillment of the contract would have been unreasonably difficult, if not impossible. But "the common law regards a promise as binding according to its terms, even though it proves impossible of performance, unless the promisor can show that it falls within an excepted clause." *Williston on Contracts,* §§ 1967, 1979; Restatement of Contracts, § 467. Upon this theory, the Government is clearly liable, under the Tucker Act, upon its contract.

■ The second theory, adopted by the appellees, leads by a more devious route

---

1 Note Professor Williston's criticism of Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 146 A. 293: " * * * a creditor's right should depend only on the possession by his debtor of a valuable right." —Williston on Contracts, § 356A, p. 1046.

to the same conclusion. Assuming that the Government could have repaired the fences following passage of the troops, failure to do so within a reasonable time was negligence, a tortious breach. There is, of course, a difference between the parties as to what amount of time was reasonable. The phrase "following passage of the troops" gives some indication even though no such word as "immediately" precedes the phrase. Reasonability in this case, as in all others, will depend upon the surrounding circumstances. Here the surrounding circumstances are the circumstances existent in sheep country; here the purpose in having a fence is to enclose livestock to keep them safe and to prevent their wandering and the resultant loss. Hence a reasonable time will be a much shorter period of time than if for example the fence were merely ornamental or were solely for the purpose of maintaining the privacy of the landowners or for marking boundaries. Since the Government did virtually no repairing of fences at any of the times in question, it obviously omitted to act within a reasonable time and such omission was a tortious breach of contract.

 The Government nevertheless contends that even if it is conceded that there was a tort committed, still appellees cannot recover under the Tucker Act which excludes jurisdiction of cases sounding in tort. An analysis of the cases shows that where the Government contracts through the agency of one authorized to contract for it, the Government is liable for breach of that contract whether or not the damages sound in tort. Gibbons v. United States, 8 Wall. 269, 19 L.Ed. 453; Langford v. United States, 101 U.S. 341, 25 L.Ed. 1010; United States v. Palmer, 128 U.S. 262, 9 S.Ct. 104, 32 L.Ed. 442; Schillinger v. United States, 155 U.S. 163, 15 S. Ct. 85, 39 L.Ed. 108; United States v. Berdan Firearms Co., 156 U.S. 552, 15 S.Ct. 420, 39 L.Ed. 530; and Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074. A tortious breach of contract is not a tort independent of contract so as to preclude an action under the Tucker Act. "A party may in some cases waive a tort; that is, he may forbear to sue in tort, and sue in contract, where the

matter out of which his claim arises has in it the elements both of contract and tort. But it has been well said that 'a right of action in contract cannot be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit can be maintained.'" Bigby v. United States, 188 U.S. 400, 23 S.Ct. 468, 472, 47 L.Ed. 519. "The breach of implied duty of a lessee 'not to commit waste, or suffer it to be committed,' * * * and of a bailee not to neglect 'to exercise ordinary care and skill,' * * * are duties that have their source in contract even though the guilty agents may be merely tortfeasors. To be sure, the common law fiction of waiving the tort and suing in assumpsit cannot be used as an evasion of the limited liability created by the Court of Claims Acts. * * * But where the wrong really derives from an undertaking, to stand on the undertaking and to disregard the tort is not to invoke a fictive agreement. It merely recognizes a choice of procedural vindications open to the injured party." Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 521, 83 L.Ed. 784; 9 Williston on Contracts, 294, § 201.

 It is therefore apparent that under either theory the court has jurisdiction of this case under the Tucker Act, and appellees may recover for the value of their fences, for money expended in the effort to maintain the fences, and for such damages as reasonably flow from the breach of the contract, that is, for loss of or damage to livestock which is attributable to the straying of the livestock made possible by the unrepaired breaches in the fencing. Restatement of the Law of Contracts, § 330; Williston on Contracts, § 1344.

 It is said that Title 31 U.S.C.A. § 223b, provides the remedy proper in appellees' case, that this remedy is exclusive, or, if not exclusive, one which must be pursued prior to filing suit. We think this contention cannot be sustained. The act provides "for the settlement of claims for damage to or loss or destruction of property or personal injury or death caused by military personnel or civilian employees,

or otherwise incident to activities of the War Department or of the Army." While under the act, the Secretary of War is "authorized to consider, ascertain, adjust, determine, settle, and pay [claims] in an amount not in excess of $500, or in time of war not in excess of $1,000, where accepted by the claimant in full satisfaction and final settlement * * *," he is not required to do so. Clearly, the Secretary's authority is limited to those cases where the claimant is willing to accept and does accept in full satisfaction the settlement made, but there is no provision in the act making it mandatory upon the Secretary to consider and settle even those cases. The further provisions that the Secretary of War "may report such claims as exceed $500, or in time of war $1,000, to Congress for its consideration," and "Any such settlement made by the Secretary of War * * * shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary," neither limit nor modify the Tucker Act with respect to claims for damages caused by military personnel in excess of $500 or in time of war, $1,000. Absent express language or words clearly and unmistakably indicative of an intent to exclude all other means of redress, we may not hold with reference to claims for damages in excess of $500 or in time of war, $1,000, caused by the violation by military personnel of an express contract, that the Tucker Act is without application. The Tucker Act stands, although a presentation of a claim to Congress through the Secretary may perhaps be said to afford a concurrent remedy. Whether or not the Tucker Act is limited or modified in cases of claims under $500 or in time of war under $1,000, we need not now decide.

On retrial the evidence should be limited to evidence of damages proximately caused by breach of the contract by failure to repair the fences. All other evidence of damages arising either out of the Army's use of the land consistent with the purposes of the lease (e. g., pollution of the water), or out of negligence independent of the contract to maintain the fences, should be excluded.

The judgment appealed from is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

HUTCHESON, Circuit Judge (Dissenting).

The opinion of the majority according, but restricting[1] to the vanishing point, the right to sue, while it keeps the promise to the ear, breaks it to the hope of the appellees. Looked at practically it in effect decides that the United States is not suable on the cause of action appellees have brought. If, then, the only matter involved here were the practical question whether in the suit appellees have brought the United States can be held substantially liable, though I am convinced that appellees have no right whatever to sue the United States, that is that the United States has not consented to be sued by by them, I should content myself with merely noting my dissent.

The opinion, however, in holding that appellees, as third parties for whose benefit it was made, have a right to sue on the contract between the government and the land owners, is based upon premises and reasoning completely opposed to what I believe not only is, but ought to be, the settled law not only in Texas but generally. I shall, therefore, without unduly laboring the matter, point out what I believe to be the underlying fallacies in the opinion, and setting briefly down the controlling principles, refer to the supporting authorities.

On page 723 of 165 F.2d, the opinion states:

"Appellant contends that the appellees not being parties to the lease cannot sue upon the contract. We think the lease was drawn with the double purpose of benefiting both the owners of the lands in ques-

---

[1] "On retrial the evidence should be limited to evidence of damages proximately caused by breach of the contract by failure to repair the fences. All other evidence of damages arising either out of the Army's use of the land consistent with the purposes of the lease (e. g., pollution of the water), or out of negligence independent of the contract to maintain the fences, should be excluded."

tion and their tenants, appellees. * * * But the paragraph in question provides for replacement of the fences following the passage of the troops, and we think the inescapable conclusion must be that the agreement was intended by the parties also to benefit the tenants in their business of raising livestock."

In thus holding that merely because the existence of the tenants and their use of the land was known to the United States, and they did derive some incidental benefits from it, the contract was made for the benefit of the tenants as third parties and the United States had consented to be sued upon it, the opinion runs counter to settled principles of law as they are set out in text books, treatises and cases.

In 12 Am.Jur., Contracts, beginning with Sec. 273 and running through Sec. 294, the question of the rights of third parties to enforce promises made for their benefit is fully and thoroughly discussed. Laying down the general principles under which, by the American majority rule, a third person may enforce a promise made for his benefit, beginning with Sections 279 and running through 293, the text sets down with clarity and precision the conditions and limitations upon such right. Among the limitations pointed out, these seem to be outstanding: (1) The contract must have been intended for the benefit of the third person in order to entitle him to enforce it, i. e., it must have been made with the intention of conferring on the third party a right to sue;[2] (2) a third person for whose direct benefit a contract was entered into may sue for breach of it, but if the benefit is only incidental, he may not.[3] "Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefitted does not give him a right to sue for its breach". Sec. 282, American Jurisprudence. American Law Institute Con-

tracts, Sec. 147, "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee".[4]

In Sec. 283, American Jurisprudence, it is said: "The view has been taken by federal courts that one not a party to a contract may enforce the promise or obligation only where he is the beneficiary solely interested in the promise and the contracting parties intend to recognize him as a primary party in interest."

Among cases supporting these views may be cited Long v. Reiss, 290 Ky. 198, 160 S.W.2d 668; Sachs v. Ohio National Life Ins. Co., 7 Cir., 148 F.2d 128, 158 A.L.R. 688; United States ex rel. Harges v. Maryland Cas. Co., D.C., 64 F.Supp. 522. The decisions of the courts of Texas are to the same effect. In Knox v. Ball, 144 Tex. 402, 191 S.W.2d 17, 21, 164 A.L.R. 1453, the court said:

"It is the rule that a person not a party to a contract may enforce it if it appears that it was made for his benefit, however, the presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties, * * * 17 C.J.S. [Contracts § 519] 1129."

Another important principle which is of peculiar application here is set out in Sec. 145 Contracts, Restatement:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless

"(a) an intention is manifested in the contract, as interpreted in the light of the

---

[2] Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 146 A. 293, 294, where it is said: "that it is in this sense of intent to create a direct obligation to the third party that we spoke of the intended benefit to him, rather than in the sense of a desire to advance his interests."

[3] Robins Dry Dock v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290; German Alliance Co. v. Home Co., 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195, 42 L.R.A.,N.S., 1000.

[4] Texas Annotations to Contracts shows that this is also the law of Texas. Cf. Nalle v. Costley, Tex.Civ.App., 174 S.W. 625; City of Wichita Falls v. Swartz, Tex.Civ.App., 57 S.W.2d 236.

circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, * * *"

Texas Annotations, citing House v. Houston Waterworks Co., 88 Tex. 233, 31 S.W. 179, 28 L.R.A. 532, City of Wichita Falls v. Swartz, Tex.Civ.App., 57 S.W.2d 236, declares, "This clause is followed in Texas."

These principles, if this were an ordinary suit between private parties, would be potent enough to defeat appellees' suit, but when, as here, the third party contract theory is resorted to to hold the United States liable under a consent to sue, it must be made crystal clear that the United States in contracting with the landlords was expressly consenting with the tenants to be sued. In the face of the settled law as to the strictness with which the consent of the United States to sue is construed,[5] and in the face of the very careful attempt of the United States, in dealing with the landlords, to limit its liability to injuries caused from negligence, there is, I think, no ground for holding that the United States contracted with these tenants to allow them to sue it for injuries to their stock from the failure of the United States to keep its contract with the landlords for replacing their fences. I, therefore, dissent from the holding that the contract was made with the intention of consenting with the tenants to be sued.

But if I could agree with the majority that the tenants have the same right to sue that the landlords have, I still could not agree, in the face of the express statement of the contract, that the government would "not be liable for loss of, or damage of any nature to livestock, save and except the loss of, or damage to said livestock due to negligence", that a cause of action for damages to stock, suable under the Tucker Act, has arisen out of this contract to restore the fences. This for the simple reason that no agent of the United States can give a cause of action for negligence suable under the Tucker Act by merely contracting to do so. If, therefore, which I do not believe, the contract could be construed as intending to give a cause of action for negligence for damages "sounding in tort", it would be invalid as beyond the power of an officer of the government to consent to suits where Congress has refused to do so.[6] I think it plain, however, that the above quoted clause of the contract was intended not to confer but to completely deny to any and everyone a right of suit on the contract for damages to livestock arising from negligence. The majority opinion in sending the cause back for the recovery of damages, if any, from the United States, damages arising from negligence, and, therefore, "sounding in tort" in effect converts what is a denial of a right to recover damages to livestock by suit on the contract into a consent to sue for them. I think this may not be done. Instead of reversing the judgments and remanding the causes for new trial, the causes should have been reversed with directions to dismiss them.

---

[5] Maryland Cas. Co. v. United States, 4 Cir., 155 F.2d 823; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472.

[6] Bigby v. United States, 188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960; Wilbur v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; Coleman v. United States, 6 Cir., 100 F.2d 903.