[Bryant, Adm'r, v. Stephens et al.]

# Bryant, Adm'r, *v.* Stephens *et al.*

### Bill in Equity to Enforce Vendor's Lien, and for an Account.

1. *Contract; when altered by subsequent contract.*—Where one gave his promissory note for the excess on an exchange of lands, or for purchase of part of the lands, it being immaterial which, and subsequently gave two notes, with the recital on each that "the consideration for which this note is given, is the following described lands, lying in Coffee county," the land being the same as that upon which the original note was given; *held*, that the contract evidenced by the original note, was altered by the giving of the subsequent notes.

2. *Same; what inadmissible to contradict subsequent contract.*—In the absence of fraud or mistake, such recital will be considered true, and incapable of contradiction by parol evidence; and in no event can such recital be altered by mere inferences from evidence of the original contract.

3. *Contract; how construed.*—Contracts, not offensive to law or public policy, must have effect according to the intention of the parties. To ascertain such intention, regard must be had to the subject-matter, the relation of the parties at the time of the contract, and the law which it is justly inferable they had in view while contracting.

4. *Lien on lands; when created by notes; nature of lien.*—A lien on lands is created by promissory notes when the land is charged with the payment; and, in equity, the nature of such charge is that of an equitable mortgage.

5. *Exchange of lands; lien for the excess.*—When A makes a contract with B for the exchange of lands, and the lands of A exceed in value those of B, and B agrees to pay A for the excess, A, though having conveyed his land to B, will have a lien on *all* the land conveyed, for the excess which is considered but purchase-money owing him by B. If, however, the contract be for a sale of the excess, and an exchange of the other land, A would have an equitable lien for the purchase-money, only on the part or excess purchased by B.

6. *Priority of mortgage over equitable lien.*—Where A exchanged or sold lands to B, for the excess of which B executed his note to A, after which B executed a mortgage of the same premises to C, such mortgage has priority over an equitable lien created by two notes subsequently executed by B to A, in lieu of the original note and in alteration of the original contract. And it is immaterial whether the consideration of C's mortgage be an antecedent or presently contracted debt.

7. *Lien on several kinds of property; right of party having lesser lien.*—If a creditor has two funds to which he may resort for payment, or has a lien on two parcels of land, or on land and personal property, and another creditor has a lien on only one of the funds or of the parcels of land, or on the land and not the personalty, the latter may compel the former to resort to the funds or property on which the latter has no recourse, and exhaust it before subjecting the other. If, through the former's negligence, he fails to subject any part of the personalty to the payment of his debt, he must bear the consequences; and the value of such property should be ascertained and applied to the extinguishment of his debt, in relief of the lands, for the benefit of the other creditor.

8. *Exception to register's report; when not considered by Supreme Court.*—Where the exceptions to the report of the register do not appear to have been passed upon by the Chancellor, they cannot, for the first time, be considered in the Supreme Court.

APPEAL from the Chancery Court of Coffee.

Heard before the Hon. ADAM C. FELDER.

[Bryant, Adm'r, v. Stephens et al.]

On the 10th of May, 1873, one Josiah Davis filed his bill in this cause, against appellees, Daniel J. Stephens and A. G. Hammond. After the filing of the bill, and before the June term, 1874, when said cause came up for decree and reference, Davis died, and leave was given to revive in the name of W. W. Bryant, the appellant, as his administrator.

The bill avers, 1st, that about November 4th, 1870, Davis traded or sold to said Stephens, certain described lands in Coffee county; that for and in consideration of 120 acres of said land, the said Stephens sold or traded to Davis 280 acres of land in Pike county; that further, for and in consideration of all of said lands first above stated, the said Stephens traded or sold to Davis 200 acres of land situated in said county of Pike, and also at the same time executed his promissory notes to Davis for the balance of $600, due for the first above mentioned lands, and that Davis executed a deed of the first mentioned lands to Stephens, and put him in possession, and he is still in possession. 3d. That, in consequence of said deed failing to correctly describe the said lands, about the 28th of May, 1872, Davis executed another deed to Stephens correctly describing said lands, and, in lieu of said note for $600, Stephens (having paid $100 of the $600 about Jan. 1st, 1872,) executed his two notes, payable to Davis, respectively, on the 1st of October and 1st of January, 1874; the first for $106, and the others for $200 each. Upon each note was written: "The consideration for which this note is given, is for the following lands lying in Coffee county, to-wit:" (here describing the land as first above mentioned); that the first two notes are now due; that by special agreement between Davis and Stephens, the vendor's lien may be enforced against the third note as if it were now due, except interest. 4th. That said Stephens executed to one A. G. Hammond (one of the appellees), a mortgage deed to said first mentioned lands about the 18th of March, 1872, which has not been satisfied; that said Hammond was duly notified by both Davis and Stephens, in person, before he took said mortgage, that the purchase money for said land had not been paid, and was a lien upon said lands.

The prayer of the bill is, that said Hammond be required to come in and surrender his said mortgage, that the same may be cancelled, so far as Davis' interest is concerned; and that said notes may be declared a lien upon said land in favor of Davis, and that the land may be sold for their payment, and that an account be taken, and for general relief.

The said Stephens, in his original answer, admits and avers each and every allegation of Davis' bill to be true.

The said Hammond, in his original answer, admits that Davis executed to Stephens said deed, but avers that said deed recited on its face that Davis had received of Stephens $2500, paid for said lands, which was the full amount of the purchase money, which deed Stephens returned to Davis after he had executed said mortgage to Hammond—and said deed is now in Davis' possession. Said Hammond admits that on the 20th of May, 1872, Davis executed to Stephens another deed to said lands, reciting upon its face that in consideration of $2500, in hand paid by said Stephens; &c. Said Hammond avers that he "knows nothing of said notes mentioned in the third paragraph of said bill, or the special agreement entered into between complainant (Davis), and defendant (Stephens)." Hammond admits that said mortgage was executed to him, as alleged in the bill, and alleges that said mortgage was given in lieu, in part, of a mortgage deed executed by said Stephens to one John R. Darby on the same lands, on the 26th of April, 1871, to secure a present indebtedness contracted at the time of the execution of said mortgage, which mortgage had been transferred by said Darby to Hammond, in May, 1871, for a valuable consideration. Said Hammond denies that he ever had notice that there was any of the purchase-money for said lands unpaid, until long after the execution of said mortgage by Stephens to Hammond.

At a subsequent term, Stephens was allowed to amend his answer, which was objected to by Bryant (Davis' administrator, Davis having in the meantime died), on the ground that it denied the averments of his original answer. In such amended answer, Stephens denies that all of said lands were sold to him, and avers that he exchanged for a portion of said lands, and executed therefor a deed to certain lands in Pike county, and that he then purchased the excess of Davis' lands for $600, and executed his note therefor on the 4th of November, 1870; that said Davis executed to him a full deed therefor, admitting full payment; that Stephens went immediately into possession thereof, where he still remains.

Stephens was allowed, over complainant's objection, to introduce parol testimony to disprove the written recitals in the deeds and notes, and also, as appellant claims, "to disprove his solemn admissions and statements in his original answer, and to prove a payment of one hundred and twenty-five dollars, after he had solemnly admitted that there had been no such payment." This proof was of the averment in the amended answer.

The following assignment of errors will show the points raised:

1. Allowing the original answer sworn to in Davis' lifetime to be amended by an answer—sworn to since Davis' death—denying all of the allegations of the original answer.

2. In allowing Stephens to testify to transactions with and statements of appellant's intestate, without being called to do so by appellant, and thereby make evidence for himself.

3. Allowing Stephens to introduce parol evidence as to what the trade was, and thereby contradict, vary, or add to the written evidence as contained in the deed and notes.

4. The final decree, at the June term, 1874, that complainant was entitled to a lien on only 120 acres of the land mentioned in the bill, as against Stephens.

5. In decreeing the respondent, Hammond, was an innocent purchaser without notice of complainant's lien as to all the lands.

· 6. In the chancellor's order to the register to state an account, and not ordering him to ascertain what amount of Hammond's mortgage was given on a present, and what for a past consideration at the date of the mortgage; what amount Hammond has received of the personal property; what amount had been wasted or used by Stephens; and deducting the past consideration from the amount found due Hammond, and charging Hammond, as against complainant, with the amount of such personalty included in the mortgage, as well as the property still remaining in Stephens' hand as the property which Hammond suffered Stephens to waste or use, and also to ascertain what amount Stephens had paid Hammond on the mortgage.

7. The register erred in stating the account, in receiving Stephens' amended answer as evidence, in proving a payment made by Stephens to respondent's intestate, &c.

J. E. P. FLOURNOY, for appellant.

W. D. ROBERTS & G. T. YELVERTON, contra.

BRICKELL, C. J.—1. We do not deem it material to inquire whether the original contract between Davis, the intestate of the appellant, and Stephens, was an exchange of lands, and the lands of Davis exceeding in value the lands of Stephens, for such excess, the latter gave his promissory note, which was taken up by the present notes; or whether it was an exchange of part, and a sale of part of the lands, and the original note was for the purchase-money of the part sold. Whatever that contract may have been, it was altered by the subsequent agreement between the parties, shown by the present notes. Each of these express, *the con-*

*sideration for which this note is given, is the following described lands lying in Coffee county,* with an immediate description of the lands by the governmental survey.

2-3-4-5. If this recital be true, and in the absence of fraud, or mistake, averred, and admitted or proved, as between Stephens and Davis, it must be accepted as true, incapable of contradiction by parol evidence, and in no event capable of alteration or contradiction, by mere influences from evidence of the original transaction. A lien on the lands is created by the notes. The lands are charged with the payment of the notes, and in equity the nature of the charge is a mortgage. Contracts, not offensive to law or public policy, must have effect according to the intention of the parties. In ascertaining the intention, we must regard the relation of the parties at the time of the contract, its subject-matter, and the law, which it is justly inferrible they had in view in contracting. There had been exchanges of land between Davis and Stephens, is a fact not controverted. The entire transaction, it is apparent, was, that Davis should acquire the lands held by Stephens in Pike county, and Stephens should acquire the lands held by Davis, in Coffee county. The lands of Davis exceeded in quantity, and in value, the lands of Stephens. If the original contract was of exchange and Stephens agreed to pay Davis the excess in value of his lands, though Davis may have conveyed, he had a lien on all the lands conveyed, for the excess, which was in fact but purchase money, owing him by Stephens.—*Burns v. Taylor,* 23 Ala. 255. If it was not wholly of exchange, but a sale of a part, and an exchange of the other lands, he had an equitable lien on the part which was sold for the unpaid purchase-money. Standing in this relation, contracting in reference to the same subject-matter, the original note of Stephens is surrendered, that note being a lien on the whole, or on a part of the lands described in the new notes. The lien of the original note, was the implied, equitable lien of a vendor, who parts with the legal estate for unpaid purchase-money. The new notes are executed, and on their face ·express as their consideration certain lands. The recital of the consideration must be rejected as useless, or it must be regarded as the declaration of a charge on the lands for the payment of the notes. Davis intended to acquire, and Stephens intended to charge the lands, or this recital is unmeaning, in addition to being untrue. We give it effect, and allow a motive for its introduction, when we construe it as creating a charge, or lien on the lands, of the same nature as the equitable lien of a vendor, which a court of equity implies and enforces. It was this lien which was in the

minds of the parties when the notes were made to express the fact and consideration which raises the lien. In *Donald v. Hewitt*, 33 Ala. 548, it is said, "Every agreement for a lien, or a charge *in rem*, constitutes a trust, and is accordingly governed by the general doctrine of trusts. Such a lien or charge is called an equitable mortgage, because courts of chancery, regarding them as trusts to be enforced, attach to them the incidents of a mortgage." This lien being created by express contract, displaces the lien a court of equity would imply, because it is a security Davis carved out for himself.—*Foster v. Athenaeum*, 3 Ala. 302. It is, therefore, we repeat, unimportant what was the original contract, or the original consideration of the notes. They declare a lien on the lands described, which must be enforced, and the Chancellor was in error in limiting it to a part only of the lands.

6. The notes were given, and the alteration of the original contract made subsequent to the mortgage to Hammond. The notes operating as an equitable mortgage, are subordinate in lien to the mortgage to Hammond. Nor is it at all of consequence, whether the consideration of Hammond's mortgage was an antecedent or a debt contracted presently on the faith of it. Either is a sufficient and valuable consideration to support it, and being prior in point of time, it is prior in right to that created by the notes of Stephens to Davis. No inquiry as to the rights of a *bona fide* purchaser to protection against prior equities is involved. By his mortgage Hammond not only acquired the legal estate, but the prior equity, and as between him and the appellant, the rights and equities of a senior and a junior mortgagee are involved.

7. Hammond is, however, bound to exhaust the personal property conveyed by the mortgage to him, before he has recourse to the lands. The general principle of a court of equity is, that if a creditor has two funds to which he may resort for payment, or has a lien on two parcels of land, or on land and personal property, and another creditor has a claim or lien on one only of the funds, or on one only of the several parcels of land, or on the land and not the personal property, he cannot be disappointed by the election of the former to take payment from the fund or lien on which only he can have recourse. He may compel the latter to resort to the fund on which he has no recourse, or to the property on which he has no lien, and exhaust it before subjecting the other.—*Cheeseborough v. Millard*, 1 Johns. Ch. 409 ; *Aldrich v. Cooper*, and notes, 3 Lead. Eq. Cas. 198. If, after the notice of the lien of Davis, Hammond, from a want of proper dili-

[Balkum v. Wood.]

gence, has failed to subject any part of the personal property to the payment of the debt due him, the loss ensuing must not be visited on Davis. It was his own negligence, and he must bear the consequences of it. The value of such property should be ascertained and applied to the extinguishment of the debt due him, in relief of the lands, for the benefit of Davis.—*White v. Brown*, 2 Cush. 412; *Lewis v. DeForrest*, 20 Conn. 427.

8. The exceptions to the report of the register do not appear from the record to have been passed upon by the Chancellor, and cannot, for the first time, be considered in this court. They are now immaterial, as they fall with the reversal of the decree.

Let the judgment be reversed, and the cause remanded.