192 So. 502

**G. F. A. PEANUT ASS'N v. W. F. COVINGTON PLANTER CO. et al.**

**4 Div. 110.**

Supreme Court of Alabama.

Dec. 7, 1939.

564

W. L. Lee and Alto V. Lee, III, both of Dothan, for appellant.

G. D. Halstead, of Headland, and J. N. Mullins, of Dothan, for appellees.

THOMAS, Justice.

The case was submitted upon an agreed statement of facts and judgment was for the defendant.

The complaint contained counts for conversion and for breach of contract.

Appellant's counsel clearly stated the case as follows: The plaintiff corporation is one that was organized for the purpose of carrying into effect the governmental program of attempting to stabilize or peg the price of agricultural products. In this instance, peanuts were to be bought and sold under governmental regulation in accordance with the terms of the contract existing between the plaintiff corporation and the United States Department of Agriculture, as same appears in agreed statement of facts. Under the contract the plaintiff corporation was to purchase peanuts through duly authorized agents, and this defendant was one such agent. Prices were specified in the contract with the Department of Agriculture. After a purchase by plaintiff corporation, peanuts were to be offered for sale at a public auction and were to be sold to the highest bidder for cash. After the sale the plaintiff corporation was to be paid by the Department of Agriculture, upon due application, the difference between the amount for which said peanuts were sold and the amount which was paid for same. Plaintiff corporation was also to receive an additional sum for handling said peanuts, which was designated as a, time allowance and regulated by the contract with the Department of Agriculture.

By virtue of the last indicated contract, plaintiff corporation and defendants entered into a contract on October 25, 1937, designated as "Receiving and Warehouse Agreement." Under said contract, defend-ants, as agent of plaintiff corporation, were to purchase peanuts according to "Warehouse Allotments and Purchase Authorizations," as furnished the defendants by said plaintiff corporation. These purchases so made were to be from persons who had first applied for and received membership in the plaintiff corporation, as may be noted in the Warehouse Allotments and Purchase Authorizations.

Defendants purchased, as the agent of plaintiff, approximately 2,360,762 pounds of peanuts under purchase authorities, issuing therefor receipts on Form GFA–3 and paying for same with drafts, Form GFA–2. These drafts were payable through the Commodity Credit Corporation and Reconstruction Finance Corporation, c/o The Federal Reserve Bank of Atlanta, and were charged to the account of the plaintiff corporation. Of the approximate 1200 tons purchased as we have indicated, 67 tons were runners, grade No. 2, and 1133 tons were runners, grade No. 1 and respective prices therefor were fixed by due authority.

On December 22, 1937, January 1, March 12, March 17 and March 25, 1938, the defendants, pursuant to due demand, delivered to the plaintiff corporation approximately 2,252,078 pounds of peanuts. At the time of these deliveries plaintiff corporation surrendered to the defendants all warehouse receipts, Form GFA–3, which had theretofore been issued by said defendants.

After the last delivery, defendants had on hand some 27 tons of said peanuts in its warehouse in Headland, which were purchased by defendants, as agent for the plaintiff corporation, and for which defendants had issued warehouse receipts and drafts as hereinabove described. It was agreed by and between the plaintiff corporation and the defendants *that the shrinkage during the handling of said peanuts did not amount to 3%, but only amounted to about 1%, thereby leaving the above 27 tons on hand after all deliveries had been made.* The price of said peanuts is noted in agreed statement of facts, according to the scale of prices as to classes we have indicated.

Defendants refused to deliver the 27 tons of peanuts after the plaintiff corporation's due demand on them for same of date of May 13, 1938. At the time of the submission of this cause, it was agreed, that the peanuts had not been de-

livered nor had defendants paid the plaintiff corporation any sum of money therefor. It was further agreed that all charges of the defendant in connection with the handling of said peanuts as delivered and the 27 tons on hand had been paid; that defendants had no charge on said peanuts as a result of its receiving and storing same.

This is sufficient to illustrate as to the respective counts in trover for the conversion of said peanuts, and count two was for breach of contract, declaring for the failure to deliver the 27 tons in question after due demand had been made therefor upon defendant.

■ Well established rules of construction of contracts have been urged in the concise oral argument and in brief of counsel. To illustrate the established rules, it should be said that inconsistencies in contracts are to be reconciled, if susceptible of reconciliation, and if not, the doubt will be resolved in favor of the first clause as expressing the agreement and intention of the parties within the law (Lowery v. May, 213 Ala. 66, 104 So. 5), and when considered in and collected from the entire instrument. Bryant, Adm'r, v. Stephens et al., 58 Ala. 636.

■ It is further established on the important subject of contracts and rules of construction that obtain, that the intention of the parties to a contract controls its interpretation and that to ascertain such intention, regard must be had to the subject matter, the relationship of the parties at the time of the contract, and the law which it is justly inferable they had in view while contracting. Bryant v. Stephens, supra; Penn Mutual Life Ins. Co. v. Filquett, 229 Ala. 203, 155 So. 702; Russell v. Garrett, 208 Ala. 92, 93 So. 711; City of Albany v. Spragins, 208 Ala. 122, 93 So. 803.

■ Courts cannot make a contract which the parties did not intend by their own conduct to make and to accomplish their purposes. Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86. That is to say that where terms of doubtful meaning are used in a contract, they will be construed against the party who framed the same, unless the contract would thereby be annulled *or other rules of construction thwarted and unless the doubtful terms were the common language of both parties.* Denson v. Caddell, 201 Ala. 194, 77 So. 720. [Italics supplied.]

■ Contracts will not be construed so as to render them oppressive or inequitable as to either party or so as to place one of the parties at the mercy of the other, *unless it is clear that such was their manifest intention at the time the agreement was made.* Little Cahaba Coal Co. v. Aetna Life Ins. Co., 192 Ala. 42, 68 So. 317, Ann.Cas.1917D, 863.

In Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681, 684, 27 A.L. R. 834, it is said: "* * * a contract will not be construed so as to render it oppressive or inequitable as to either party, or so as to place one of the parties at the mercy of the other, unless it is clear that such was their intention at the time the agreement was made; and 'all words, whether they be in deeds, or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and person.' L. C. Coal Co. v. Aetna Life Ins. Co., 192 Ala. 42, 68 So. 317, Ann.Cas.1917D, 863. And, when the language of a contract will, with equal reason, bear more than one interpretation, courts are inclined to give to it that meaning which is unfavorable to the party who has used or drafted the language. Denson v. Caddell, 201 Ala. 194, 77 So. 720; 16 R.C.L. 699, § 188."

The decision of this case, we take it, rests upon the proper interpretation and construction of the warehouse receipt, which reads, in part, as follows:

"Triplicate—Warehouse Receipt for Peanuts—Not Negotiable.

"Received for

"Storage from *S. D. Johnson of Dothan, Alabama*

"For the Account of the GFA Peanut Association

"Peanuts of the amount, kind and grade described herein, stored in the above named warehouse, for which this receipt is issued, Said peanuts are Not Insured by the under signed Warehouse against loss or damage by fire and lightning, unless expressly stated otherwise on the face of this receipt. Said peanuts are accepted for storage until July 1st after date. The undersigned Warehouseman is not owner of the peanuts covered by this receipt, either solely, jointly, or in common with others. Upon the return of this receipt and the payment of all charges and liabilities due the undersigned Warehouseman, as stated wherein *said Peanuts will be delivered to the Bearer less an allowance for*

*shrinkage of not to exceed 1-½ per centum for the first months storage and ½ per centum for each additional·month or fraction thereof, but in no event more than a total of three per centum from gross weight as shown herein.*

"Issued at Headland, Alabama, on 10/27/37 Inspection for diversion on 10.27/37 and the peanuts described herein are of the grade shown, etc." [Italics supplied.]

What then is the import of these words? What of the words "less an allowance for shrinkage not to exceed, etc."? Construed in the light of the context of the different instruments that created the relation and contract of the respective parties, what is the intention of the contract?

 In answering these questions, due regard is to be had of the subject matter as well as of the relationship of the two parties and of the ends to be attained by such contract by the department of the federal government under which the parties acted.

The parties to the contract in question made definite allowance and provision for shrinkage that might occur in the peanuts placed in storage; and such amount of shrinkage might vary, depending upon conditions of storage, weather and time of withdrawal. It was impossible for the parties to state the exact amount of shrinkage that might occur and the limitation placed thereon was that it would not be in excess of three per centum during the entire period of storage covered by the storage contract. Within such limitations, settlement would be made between the parties.

Such are the reasonable conclusions to be drawn when the other instruments are looked to. Illustrating this is the clause of the Receiving and Warehouse Agreement, wherein it is stated, that defendants were acting in the premises as receiver and depository of plaintiff's property bought under the agency and the authorizations "by the Association." The same instrument provides for a schedule of rates of payments to be made. Thus the primary object of the contract is established—that defendants were "acting as agents" for the plaintiff in handling the peanuts, and defendant's capacity as agent in the acquiring of any interest or lien upon the property of such principal (in this instance, the plaintiff) is fixed.

When paragraph five of such warehouse agreement is considered, the duty is placed upon the defendant to provide for the plaintiff "bins" for storage of plaintiff's peanuts, and that the same not be commingled with other peanuts stored, the property of other owners. Out of this relationship, the defendant acquired no title to the peanuts purchased, other than that of agent housing the same and selling the same, and an agreed sum for the services stipulated to be rendered by this defendant to plaintiff was fixed. The defendant was, therefore, not entitled to anything but his lien or fixed charge for the services rendered as covered by the contract, and for which it was fully paid. Defendant was not to be compensated further by the amount of shrinkage. The sole purpose of the contract was to protect the warehouseman from shrinkage when it did not exceed three per centum.

It results that the ruling of the trial court was in error. The judgment of the circuit court is reversed with directions that judgment be rendered for plaintiff for the value of the 27 tons of peanuts in question according to grade and agreed price, with interest thereon from date of due demand and refusal of delivery.

Reversed and remanded with directions.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.