214 So.2d 279

**PACIFIC INSURANCE COMPANY**

v.

**Sim S. WILBANKS et al.**

**5 Div. 818.**

Supreme Court of Alabama.

Sept. 12, 1968.

**2**

Rushton, Stakely & Johnston, Montgomery, for appellant.

Samford, Torbert & Denson, Opelika, John F. Dillon, IV, and Wm. I. Byrd, Alexander City, Sam W. Oliver, Dadeville, and Jones, Murray, Stewart & Varner, Montgomery, for appellees.

LIVINGSTON, Chief Justice.

This appeal is from a decree of the Circuit Court of Tallapoosa County, Alabama, in Equity.

The complainant, E. B. Brown, d/b/a Brown Concrete and Engineering Company, filed a bill seeking the establishment of a lien and a money judgment against Sim S. Wilbanks and Elizabeth Wilbanks, owners of the property described therein.

Sim S. Wilbanks answered and made his answer a cross bill for declaratory judgment, bill of interpleader and bill in the nature of a bill of interpleader seeking affirmative relief thereunder. This cross bill made parties thereto a total of eighteen (18) cross-respondents, including the builder, a variety of subcontractors and materialmen, and the Pacific Insurance Company as surety on the building contractor's bond, said bond being the main subject of controversy in this suit. A host of additional pleadings were filed by various parties complainant, respondent, cross-complainant and cross-respondent, and some of the parties made cross-respondents later filed original bills creating new causes all of which were subsequently consolidated by agreement of the parties and heard as one by the lower court.

The trial court heard the evidence ore tenus, and chose to invoke the provisions of Act No. 101, Gen.Acts of Alabama 1943, Reg.Sess., p. 105, listed as Sec. 372(1) of Title 7, Code Recompiled in 1958. Consequently, the usual presumptions in favor of the trial court will be indulged here, though only competent legal evidence will be considered.

The material facts are that the cross-complainant, Sim S. Wilbanks, hereinafter referred to as Wilbanks, negotiated with E. N. Merriwether, Jr., Inc., a building contractor, hereinafter referred to as the builder, for the construction of a residence in Alexander City, Alabama. The form of the construction contract contemplated between Wilbanks and builder was provided by Carey Owens, the architect for the Wilbank's job. This contract is a standard form document issued by the American Institute of Architects (A.I.A. Document No. A–101, 1958 Edition) for use when a stipulated sum forms the basis of payment, and such was the case with the Wilbanks job. The contract heading is as follows:

"THE STANDARD FORM OF AGREEMENT BETWEEN CONTRACTOR AND OWNER FOR CONSTRUCTION OF BUILDINGS."

Although this contract form is copyrighted by the A.I.A., copies are readily available for a nominal price and are customarily furnished by architects employed on construction projects of the sort here involved. There is no question that this form contract is readily available and easily accessible from a variety of sources.

Article 30 of this standard form contract under which Wilbanks and the builder undisputedly were at all times operating provided that Wilbanks had the right to require the contractor (whoever he might be) to furnish bond covering the performance of the contract *and* payment of all obligations arising thereunder. Wilbanks, in fact, informed the builder that it would not be awarded the contract for the construction of his residence unless and until the bond called for by the contemplated standard form A.I.A. contract was secured in advance of awarding the building contract. The builder, through its alter ego, testified that it was willing to do whatever Wilbanks desired as preliminary to being awarded the contract.

The builder, pursuant to an understanding between it and Wilbanks, obtained a bond from an agent of the appellant, Pacific Insurance Company (hereinafter referred to as Surety). Surety's agent, Elmer Tallant, of the Elmer Tallant Insurance Agency, testified on deposition as follows:

"Q. How did you determine what kind of bond to write?

"A. It [contract] said on there 'performance bond.'

"Q. You looked at the contract to see what the contract called for?

"A. Yes, that's right.

"Q. And the bond that you wrote was the bond called for by the contract?

"A. That's right.

"Q. And the bond that you issued, or had issued, of Pacific Insurance Company was a bond that was to comply with the terms of the contract or what it called for, was it not?

"A. That's right.

"Q. Whether it be a payment or performance or whatever the contract called for, you wrote the bond for?

"A. Yes, Sir."

It should be noted that the testimony in this deposition was later changed by Tallant at the time of the trial. Nevertheless, just exactly what kind of bond the builder asked for is in dispute. The builder's application for a bond, which Tallant admitted was his or his staff's responsibility to complete, is blank as to the space provided for the type bond being applied for. In short, the application filed with appellant surety's agent does not show the kind of bond applied for. The record shows that the builder was billed for and paid for a "Contractor's Bond." The record also shows that the premium paid by the builder for the bond he received would not have been a penny more in amount had he been issued both a performance and a payment bond. The bond that was issued provided for the prompt and faithful performance of the building contract and adopted said building contract in toto by express reference. Article 9 of this building contract required the builder to provide and pay for all materials, labor, water, tools, equipment, etc., necessary for the execution and completion of the work.

The builder was awarded the contract and began construction according to its terms and conditions. Although the residence was substantially completed, the builder made default in that it did not complete the residence according to the terms and conditions of the contract. Builder advised Wilbanks that it could not complete construction nor pay its bills. Thereafter, Wilbanks declared builder in default and written notice was timely sent appellant Surety.

The assistant manager of Surety's bond department in New York, a Mr. John Wellencamp, corresponded with builder following its default, requesting builder to supply Surety with immediate report as to the steps taken to complete its obligation and pay its material suppliers. Although disputed in some minor respects, it seems Surety did little more following this letter except to disclaim liability with regard to payment of builder's accumulated bills. Surety

never performed its obligations under the bond and building contract and disclaimed liability to pay for the builder's indebtedness incurred during this undertaking. In rebuttal, Surety asserts it has been and is ready, willing and able to complete the construction of the residence (though not payment of materialmen) but that Wilbanks impeded its offer and prevented Surety's performance up to the filing of the several suits herein involved.

At the time of default, builder had accumulated outstanding debts to various materialmen, suppliers and laborers totaling approximately $24,000, all of which were unpaid at the time the trial court entered its decree. Wilbanks had in his possession at time of default an unpaid balance owed to the contractor of approximately $8,000. No one of the subcontractors, laborers or materialmen who might otherwise have been entitled to a lien against the real estate complied with the Alabama lien statutes and the trial court correctly found that no liens were perfected against the property. However, the trial court did find that three of the materialmen perfected liens against the unpaid balance on the contract owed by Wilbanks to the contractor.

The bond names the Pacific Insurance Company as Surety, Sim. S. Wilbanks as owner, and E. N. Merriwether, Jr., as principal. The trial court found from the evidence that the name of the principal as it appeared in the bond was in error and that it was the intention of all the parties that the true name of the principal was E. N. Merriwether, Jr., Inc., a Corporation. No point is raised on this appeal as to this finding by the court.

We come now to consideration of appellee's jointly-filed motion to dismiss and their amended motion to dismiss. In view of our final conclusion as to the merits of this cause, we find it unnecessary to rule on these motions.

■ Appellant's assignments of error are lengthy and involved. The primary issue to be decided, however, is whether the bond in this case is one indemnifying the owner or whether it is a bond guaranteeing the performance of the contract and all its terms and conditions, including the payment of all claims for labor and materials furnished under the contract. We think the latter was intended by the parties. Construing these instruments together, as must be done to determine the intention of the parties, we see no other reasonable construction. In Moorer v. Tensaw Land & Timber Co., 246 Ala. 223, 20 So.2d 105, this Court held:

"It is well settled that two writings connected by reference one to the other, or simultaneously made, with respect to the same subject matter and proved to be parts of an entire transaction constitute but a single contract as if embodied in one instrument. * * *"

Under the decided weight of authority, there is no question that the bond here, which expressly incorporated the contract and all its terms and conditions and makes the contract a part of it, is one which includes the claims of laborers and materialmen. See 77 A.L.R. 56 and cases cited therein.

■ The only question raised with regard to the coverage intended is whether the final provision in the bond immediately preceding the subscription which states "no right of action shall accrue on this bond to or for the use of any person or corporation other than the owner named herein * * *" sufficiently restricts the contract guaranteed and all other provisions in the bond preceding the exclusionary clause. In light of all the facts and surrounding circumstances connected with the execution of the bond, as well as from the evidence adduced at trial as appears in the record, we think that it does not. The exclusionary clause is repugnant to and inconsistent with all the terms and conditions of the bond which precede it. Consequently, and in keeping with prior decisions of this Court, we find the inconsistency in the bond, the exclusionary clause, which cannot

be reconciled with prior or first-stated conditions in the contract guaranteed, must be resolved in favor of the prior or first-stated conditions in the contract. Lowery v. May, 213 Ala. 66, 104 So. 5; G.F.A. Peanut Assn. v. Covington Planter Co., 238 Ala. 562, 192 So. 502. Here, the bond in question was intended not only for the benefit of the owner-obligee named therein but was also intended for the benefit of laborers and materialmen. It was in the best interests of the owner-obligee that the laborers and materialmen be paid. Such was the stated intention of Wilbanks in executing the contract with the builder as evidenced by the terms and conditions of the contract as well as by testimony of the owner (Wilbanks), Merriwether (the builder), Owens (the architect) and Mrs. Wilbanks. There is evidence in the record, the deposition of appellant's agent, which clearly evidenced the intention of all the parties, including the Surety through its representative, to issue a bond which satisfied those intentions. It should perhaps be noted here that by this decision we are not holding that parties cannot contract as they see fit within the law. Nor are we saying that exclusionary clauses will not be enforced. We are merely saying that the Surety here improperly or inadvertently inserted in the bond here involved a now standard clause in such bonds, which was not intended by the parties to be in this bond.

■■ The bond issued guaranteed unequivocally the performance of the contract and all its terms and conditions. The bond, which by express reference incorporated the contract in toto, purported further "to make sufficient funds available" to complete the contract and all its terms and conditions as a result of any and all defaults on the part of the builder. We note that the bond does not purport to make funds available exclusively to the owner and no one else, which to us negatives totally the allegation that the bond was one of indemnity only. In the face of all this, the exclusionary clause is at worst contradictory and at best an attempt to limit all the prior expressed obligations of the Surety in the bond, which, as we have concluded, was not the intention of any of the parties involved. In fact, as we understand it, the very essence and purpose of securing the type bond here involved in the first place was to assure that upon completion of the construction contract, the property would be turned over to the owner free from all incumberances of any nature whatsoever. Surely, this Court cannot be expected to sanction any other result, as urged by the appellant, when the evidence clearly shows that such was not the intention of the parties concerned. We reiterate that when called upon to construe a contract, this Court will consider its nature, facts and circumstances leading up to and attending its execution, relation and condition of parties, nature and situation of subject matter, and apparent purpose of making the contract. Scheuer v. Wise, 213 Ala. 329, 104 So. 831. This, coupled with the proposition that in construction situations the contract should be construed most strongly against the party on whom rests the obligation involved, convinces us that we have arrived at the only correct and just interpretation of the contract and bond here involved. Loeb v. City of Montgomery, 7 Ala.App. 325, 61 So. 642. With the weight of the evidence supporting a finding that the parties intended a bond guaranteeing performance of the contract which included payment of laborers and materialmen, and with the knowledge that the premium paid by the builder for the bond issued was the same premium required, and not one cent more, for both a so-called performance and payment bond, we hold the bond does cover payment of laborers and materialmen as provided by the contract guaranteed, and that Surety is liable for same, the exclusionary clause notwithstanding.

In view of this holding, appellant's assignments of error numbered 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14 and 15 need not be considered.

■ Assignment of error 19 asserts, in substance, that the trial court erred in es-

**6**

tablishing liability against the surety without finding commensurate liability against surety's principal. In Alabama Bank & Trust Company v. Garner, 225 Ala. 269, 142 So. 568, this Court held that the principal and surety are jointly and severally primarily liable to their creditor. The court further held that a surety could not compel a creditor to pursue a principal before requiring surety to pay. We might add that the record contains abundant evidence which clearly would support a decree against contractor, Merriwether. Be that as it may, the trial court's establishing liability against the surety without finding commensurate liability against surety's principal, we think, was not error. However, if it were error, it was error of which the surety has not right to complain.

 Appellant's assignment of error 20 to the effect that the trial court erred in establishing a lien to the extent of the contract balance against the property on which the contractor constructed the residence without joinder of all persons holding title to the property is also of no consequence. All the parties indispensable to an adjudication of the controversy were before the court. The fact that all those owning an interest in the property against which liens were sought were not made parties to the suit is at worst harmless error inasmuch as the trial court found that no one had perfected any liens against the property per se. All liens perfected were against only any unpaid balance owed by Wilbanks to the contractor. Sec. 46, Title 33, Code, provides for such liens, as against unpaid balance, in the absence of the perfection of materialmen's liens as provided by Sec. 37 of Title 33, Code

Assignment of error 18 charges error in the trial court's proration of the contract balance in the hands of the owner between Surety and three named subcontractors. In view of our holding with regard to the bond in this case, we modify the decree of the lower court with regard to the proration and set it aside, thus allowing the Surety full use of the remaining unpaid balance in the hands of Wilbanks to complete the contract in accordance with its terms and conditions. Baker Sand & Gravel Co. v. Rogers Plumbing and Heating Co., 228 Ala. 612, 154 So. 591, 102 A.L.R. 346; Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 129 So. 285. Upon completion of the contract by Surety, all sums remaining unspent shall be subject to the perfected liens of the three-named materialmen as found by the trial court. The decree is so modified.

Appellant's assignment of error 21 charges the trial court erred by taxing costs against appellant. Inasmuch as we here hold that the appellant-surety failed to live up to its obligation, the trial court's finding in this respect will not be disturbed. Usually, costs will be taxed in favor of prevailing party. Merchants National Bank of Mobile v. Cowley, 265 Ala. 125, 89 So.2d 616.

The decree of the lower court is modified and affirmed in keeping with this opinion.

Modified and affirmed.

LAWSON, MERRILL and HARWOOD, JJ., concur.