This case originated as a contract action brought by Dusseau Construction Company ("Dusseau") against Cedric's, Inc. ("Cedric's"), and Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. ("Alabama Farm Bureau"), seeking to recover an alleged unpaid balance due under a construction contract and to enforce a mechanic's lien for labor done and materials furnished. The contract, executed between Cedric's and Dusseau, was for the construction of a Cedric's Fish Chips building in Birmingham, Alabama, by Dusseau on property owned by Alabama Farm Bureau, with whom Cedric's had a contract to construct such a building. Subcontractors of Dusseau,[1] appellants herein, intervened in this action as plaintiffs, seeking enforcement of their mechanic's liens for labor and materials and for the recovery of payments allegedly due for their work, labor and materials. Upon these subcontractors' motion, the trial court joined United States Fidelity and Guaranty Company ("USFG") as a party-defendant. USFG was surety on a bond in which Dusseau was named as principal and Cedric's and Alabama Farm Bureau were named as obligees.
The construction contract between Cedric's and Dusseau required Dusseau to furnish Cedric's with a bond, but the contract did not specify the type of bond required. The bond itself does not specify its type. An addendum to the Cedric's-Dusseau construction contract, however, refers to the bond as a "performance bond." Dispute as to the type of bond USFG issued Dusseau is before this Court on appeal. The pertinent provisions of the bond in question are as follows:
 NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That if the said Principal shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said Obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description incurred in suits or otherwise against the said Obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall repay to the said Obligee all sums of money which the said Obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said Principal shall pay to the said Obligee all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said Principal of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void; otherwise the same shall remain in full force and virtue.
The trial court, hearing this case ore tenus, found that this bond was not a payment bond. For this reason the trial court held that USFG was not indebted to appellants. The trial court also denied appellants' claims against Cedric's and Alabama Farm Bureau, both under the Alabama lien statutes and upon appellants' constructive trust claim, and held plaintiff Dusseau's *Page 191 
claim[2] barred by the discharge of Cedric's in bankruptcy. The only money award granted by the trial court was in favor of appellants against Dusseau. Dusseau has filed a petition in bankruptcy.
Appellants appeal the trial court's holding that the bond in question was not a payment bond and that they could not recover against the surety, USFG. Appellants do not contend that they are entitled to recover against Cedric's or Alabama Farm Bureau under their liens, or that Cedric's or Alabama Farm Bureau is legally obligated to them in any way. Rather, appellants concede their liens are unenforceable. No other parties appealed. USFG is the only appellee.
The central question for our consideration is whether the bond in question entitles appellants, as subcontractors of the principal and third-party beneficiaries under the bond, to recover from the surety for their work and labor done and materials furnished under the construction contract. Stated differently, does the bond in question benefit the specified obligees, Cedric's and Alabama Farm Bureau, alone, or does it benefit both these obligees and appellants as implied third-party beneficiaries?
The bond does not specifically refer to appellants, nor does the contract between Cedric's and Dusseau, except the contract required that Dusseau's employees and subcontractors be union members.[3] Appellants then, as alleged third parties to the bond, may recover under the bond only if they can prove the bond was intended for their direct, as opposed to incidental, benefit. Ross v. Imperial Construction Company, 572 F.2d 518,520 (5th Cir. 1978).
On its face, the benefits of the bond appear to flow only to the obligees, Cedric's and Alabama Farm Bureau. Unlike the bond in Byram Lumber Supply Co. v. Page, 109 Conn. 256, 146 A. 293
(1929), there is no promise that laborers and materialmen be paid. Appellants cited Byram because it concerned, they alleged, a bond similar to the one at bar. The Connecticut Supreme Court of Errors, in construing the bond, held it entitled laborers and materialmen to recover payment for their work and materials from the surety under the bond. The bond inByram provided in pertinent part that "if the Principal . . . shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise, it shall remain in full force and effect." Id. at 258, 146 A. at 293. This same language was in a bond before this Court in Fidelity Deposit Co. v. Rainer,220 Ala. 262, 125 So. 55 (1929). Originally, this Court decided inFidelity that materialmen were not entitled to recover under the bond. Upon rehearing, however, this language was the deciding factor in this Court's determining the bond did guarantee the materialmen payment for their materials. The language of the bond at issue guarantees performance by the principal and indemnification if the principal defaults to thespecified obligees only. In this regard, the bond does not appear ambiguous.
But assuming the bond is ambiguous as appellants contend, they are not limited in their proof to the language appearing on the face of the contract. Ross v. Imperial Construction Co.,572 F.2d 518, 521 (5th Cir. 1978); see, Caldwell v. UnitedStates Fidelity Guaranty Co., 205 Ala. 463, 88 So. 574
(1921). They may also include facts and surrounding circumstances connected with the execution of the bond to show the bond was intended to directly benefit them. Id. *Page 192 
Appellants have placed strong reliance on Pacific InsuranceCompany v. Wilbanks, 283 Ala. 1, 214 So.2d 279 (1968), to support their proposition that the parties to this bond intended the bond to benefit appellants and that this intent should control. In Wilbanks, this Court allowed third party laborers and materialmen to recover from a surety on a bond which specifically provided that no action should accrue under the bond "to or for the use of any person . . . other than the owner [obligee]." Id. at 4, 214 So.2d at 282. This provision, however, was in the exclusionary clause, could not be reconciled with prior provisions of the contract, and was, in light of the evidence and surrounding facts and circumstances connected with the execution of the bond, against the intention of the parties. The construction contract in Wilbanks, which was incorporated in the bond, specifically provided that the owner could require the contractor to furnish a bond covering both the performance of the contract and payment of all obligations arising thereunder. The surety's representative testified at trial that the parties intended the bond to be the type specified in the contract. The testimony of the owner, builder, and architect all three evidenced that the bond was intended to benefit the laborers and materialmen as well as the owner-obligee. There was also evidence that the premium paid for the bond was the same in amount as that required by the surety for a payment and performance bond.
In the instant case, the construction contract, also incorporated in the bond in question, did not describe the bond and referred to it in an addendum merely as a "performance bond." At trial, a representative of Alabama Farm Bureau, an obligee, testified the bond was intended to guarantee payment to the subcontractors, but the representative of USFG, the surety, testified the parties intended only to execute a performance bond which would not guarantee such payment. There was also no evidence concerning the amount of the premium paid for the bond. Wilbanks is distinguishable on these grounds and does not control our decision here.
In conclusion, we hold that the trial court's decision is not against the great weight of the evidence. The evidence having been given ore tenus, this Court will not reverse the trial court's findings unless the findings are clearly erroneous and unjust. Adams Supply Co. v. United States Fidelity GuarantyCo., 269 Ala. 171, 176, 111 So.2d 906, 911 (1959). We acknowledge, without approving, the old principle cited by appellants that the ore tenus rule does not apply where the evidence is documentary or without practical dispute. OwensboroBanking Co. v. Buck, 16 Ala. App. 346, 77 So. 940, cert. denied,Ex Parte Buck, 202 Ala. 56, 79 So. 394 (1918). All of the evidence in this case, however, is not documentary; moreover, it is in dispute.
While it is unfortunate that the appellants are left only to seek recovery under a judgment against a bankrupt Dusseau, Alabama statutes on labor and materialmen's liens provide ways appellants could have been assured of payment for their labor and materials. See Code 1975, §§ 35-11-210 to -234; Berkowitz,The Materialman's Lien in Alabama, 9 Cumberland L.Rev. 343 (1978).
We hold that the bond in question does not require the surety to guarantee payment to the subcontractors of the principal where there is no obligation of the obligees to these subcontractors.
AFFIRMED.
MADDOX, SHORES and BEATTY, JJ., concur.
JONES, J., concurs in the result.
[1] A total of eight sub-contractors intervened in this action. Only five of these moved the trial court to have appellee USFG joined as a defendant. These same five are appellants before this Court. They are: Bill White Roofing Specialty Co., Inc., Young Heating Air Conditioning of Alabaster, Alabama, Roebuck Electric Heating Air Conditioning, Inc., Nelson Excavating 
Paving Co., Inc., and Keller Plumbing Co., Inc. For convenience, reference to subcontractors or appellants throughout this opinion will refer only to these five intervenors.
[2] We think that Dusseau's claim to which the trial court refers in its final judgment is Dusseau's allegation that defendant Cedric's maliciously interfered with a contract Dusseau had with various subcontractors, since the trial court rendered an earlier partial summary judgment as to Dusseau's other claims and the court incorporated this summary judgment in its final judgment.
[3] In construing the bond in question, we must look to the construction contract to which the bond refers and which refers to the bond. It is well settled that "two writings connected by reference one to the other . . . with respect to the same subject matter and proved to be parts of an entire transaction constitute but a single contract as if embodied in one instrument." Moorer v. Tensaw Land Timber Co. 246 Ala. 223,226, 20 So.2d 105, 107 (1944). *Page 193