On March 28, 2003, Hinkle Metals Supply Company, Inc. ("Hinkle Metals"), sued Ohio Casualty Insurance Company ("the insurance company"), alleging that the insurance company was liable on a bond it had issued on behalf of Hubert D. Fendley. Additionally, Hinkle Metals alleged that it was an intended third-party beneficiary of the bond. At the March 10, 2004, trial, the parties entered a joint stipulation of undisputed facts. On March 29, 2004, the trial court issued the following order:
 "THIS MATTER came before the Court for non-jury trial on March 10, 2004. The Court, having considered the Joint Stipulation of Undisputed Facts submitted by the parties, as well as the provisions of Ala. Code § 34-31-19 et seq. (1975), is of the opinion that the bond issued by Ohio Casualty Insurance Company, being governed by Ala. Code § 34-31-30, is intended to provide protection to the public in the event that a licensed heating and air conditioning contractor fails to complete performance of any contract agreement into which he may enter. The claim asserted by Hinkle Metals Supply Company, Inc.[,] is for non-payment for materials supplied to a licensed contractor and is not within the intended scope of protection under the bond. It is hereby
 "ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Ohio Casualty Insurance Company. Costs taxed as paid." *Page 845 
On May 6, 2004, Hinkle Metals timely appealed.
In May 2000, the insurance company issued a bond with a penal sum of $5,000 on behalf of Hubert D. Fendley d/b/a Fendley's Heating Cooling ("Fendley"). In July 2000, the penal sum of the bond was increased to $10,000. The bond was in favor of the State of Alabama pursuant to the provisions of Ala. Code 1975, §34-31-30, and was a prerequisite for Fendley to become licensed by the Alabama Board of Heating and Air Conditioning Contractors.
Hinkle Metals supplied materials for Fendley, at his request. Hinkle Metals submitted invoices to Fendley in the amount of $37,695. Fendley did not pay the invoices. Hinkle Metals commenced a civil action against Fendley. During the pendency of that lawsuit, Fendley filed a petition for Chapter 7 bankruptcy. On July 16, 2002, Fendley received a discharge in bankruptcy pursuant to 11 U.S.C. § 727. Fendley's indebtedness to Hinkle Metals was discharged in its entirety.
On February 3 and 18, 2003, Hinkle Metals sent correspondence to the insurance company seeking recovery under the bond. The insurance company denied the claim on the ground that the bond did not provide coverage for the claim asserted by Hinkle Metals. Hinkle Metals then filed suit.
"[W]hen a trial court sits in judgment of facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts." Redden v.State, 804 So.2d 196, 201 (Ala. 2001).
Ala. Code 1975, § 34-31-18 et seq., creates the Board of Heating and Air Conditioning Contractors for the State of Alabama. The purpose of the chapter is enumerated in § 34-31-19:
 "The purpose of this chapter is to certify qualified contractors on a statewide basis in order to protect the public by identifying those contractors who have the knowledge and ability to install or service and repair heating and air conditioning systems."
(Emphasis added.) To this end, § 34-31-30 authorizes a bond requirement:
 "The board may, in its discretion, when needed to assure financial stability, and professional competence may, in its discretion, require applicants for certification to post bond for the purpose of insuring performance by the certified contractor of any contract agreement into which he may enter. There shall be no discrimination between contractors similarly situated, and each classification of regulated contractors for bonding purposes must be reasonable in light of the purpose of the bond."
An administrative agency, such as the Board of Heating and Air Conditioning Contractors, has only those powers conferred upon it by the legislature. Batey v. Jefferson County Bd. of Health,486 So.2d 439 (Ala.Civ.App. 1986). "`Sections of the Code dealing with the same subject matter are in pari materia. As a general rule, such statutes should be construed together to ascertain the meaning and intent of each.'" Ex parte Ted's Game Enters.,893 So.2d 376, 385 (Ala. 2004) (quoting Locke v. Wheat,350 So.2d 451, 453 (Ala. 1977)).
On appeal, Hinkle Metals argues that the purpose enumerated in § 34-31-19 is "to protect the public." Further, Hinkle Metals argues that construing this section in pari materia with Ala. Code 1975, § 34-31-30, which authorizes the board, in its discretion, to require applicants seeking certification to "post bond for the purpose *Page 846 
of insuring performance by the certified contractor of any contract agreement into which he may enter," mandates the result that Hinkle Metals should be able to recover under the bond. Hinkle Metals argues that they had an implicit contract for materials with Fendley. Hinkle Metals alleges that Fendley did not perform his obligation pursuant to the contract — i.e., he did not pay for the materials. Hinkle Metals reasons that because § 34-31-30 applies to any contract, and because Hinkle Metals is part of "the public," it is entitled to recover under the bond. We disagree.
Section 34-31-19 defines the purpose of the chapter authorizing the creation of the Alabama Board of Heating and Air Conditioning Contractors. Although § 34-31-19 provides, in part, that the purpose of the chapter is "to protect the public," the statute more fully provides that the purpose of the chapter is to certify qualified contractors "to protect the public by identifying those contractors who have the knowledge and ability to install or service and repair heating and air conditioning systems." When the language of a statute is clear and unambiguous, the courts must enforce the statute as it is written, giving effect to its plain meaning. Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala. 1999). As an alleged third-party beneficiary of the bond, Hinkle Metals may recover only if it can prove that the bond was intended for its direct, as opposed to incidental, benefit. BillWhite Roofing Specialty Co. v. Cedric's, Inc., 387 So.2d 189,191 (Ala. 1980); cf. Vesta Fire Ins. Corp. v. Milam CompanyConstr., Inc., 901 So.2d 84 (Ala. 2004) (although a person is not a party to a contract and does not furnish any consideration, he or she may maintain an action on the contract under one condition; he or she must have been directly, and not incidentally, benefited by the contract).
Section 34-31-30 provides that the board may, in its discretion to assure financial stability, "require applicants for certification to post bond for the purpose of insuring performance by the certified contractor of any agreement into which he may enter." Pursuant to this provision, the board adopted Ala. Admin. Code Rule 440-X-3-.03, requiring all applicants for certified-contractor status to provide a $10,000 performance bond to the board. Ala. Admin. Code Rule 440-X-1.01(10) defines the term "bond" as a performance bond.
The face of the bond issued by the insurance company provides:
 "NOW, THEREFORE, If [Fendley] shall Indemnify the [State of Alabama] against any loss directly arising by reasons of the failure of [Fendley] to comply with the laws or ordinances under which such license or permit is granted, or any lawful rules or regulations pertaining thereto, then this obligation shall be void; otherwise to remain in full force and effect."
A performance bond is, however, a prerequisite to certification by the Alabama Board of Heating and Air Conditioning Contractors pursuant to "the laws or ordinances under which such license or permit is granted, or any lawful rules or regulations pertaining thereto." See Ala. Code 1975, § 34-31-30; Ala. Admin. Code Rule 440-X-1.01(10); and Ala. Admin. Code Rule 440-X-3.03(3).
Ala. Code 1975, § 34-31-19, enumerates the purpose of the chapter: "to protect the public by identifying those contractors who have the knowledge and ability to install or service and repair heating and air conditioning systems." Moreover, §34-31-30 does provide that the board may require applicants to "post bond for the purpose of insuring performance by the certified contractor of any contract agreement into *Page 847 
which he may enter." However, reading those two sections in pari materia with one another and with the rest of the chapter, the "any contract" language in § 34-31-30 refers to any contract dealing with the listed functions of the board in regard to certified contractors.
There are several listed functions: issuing licenses to identify qualified contractors (Ala. Code 1975, § 34-31-19); creating and enforcing minimum standards for installation, service, and repair (Ala. Code 1975, § 34-31-21(g)); and creating and enforcing requirements for a licensee's continuing education (Ala. Code 1975, § 34-31-26(d)). At no point in the chapter are materialmen mentioned.
The purpose of § 34-31-18 et seq. is to protect the public with regard to the installation, service, and repair of heating and cooling systems. Ala. Code 1975, § 34-31-19. Reading § 34-31-19 in pari materia with § 34-31-30 and the rest of the provisions in the chapter, it is clear that the "any contract" language found in § 34-31-30 refers to performance of any contract that deals with installation of a heating or cooling system. Furthermore, Hinkle Metals has failed to show that the bond was for their direct benefit. Bill White Roofing, 387 So.2d at 191.
In Bill White Roofing, Dusseau Construction Company, a principal contractor that had been required to furnish a bond to Cedric's, Inc., sued Cedric's, Inc., to enforce a mechanic's lien for labor done and materials furnished. Subcontractors intervened as plaintiffs in the action, and the surety on the bond was joined as a party defendant. The subcontractors were seeking a mechanic's lien for materials, among other things. The subcontractors were unable to prove that the bond was intended for their direct benefit. Bill White Roofing, 387 So.2d at 192. The supreme court affirmed the trial court's ruling that the bond was not a payment bond and that the subcontractors could not recover against the surety. The supreme court noted, however:
 "While it is unfortunate that the [subcontractors] are left only to seek recovery under a judgment against a bankrupt Dusseau, Alabama statutes on labor and materialmen's liens provide ways [subcontractors] could have been assured payment for their labor and materials. See Code 1975, §§ 35-11-210 to — 234; Berkowitz, The Materialman's Lien in Alabama, 9 Cumberland L.Rev. 343 (1978)."
Bill White Roofing, 387 So.2d at 192.
Because Hinkle Metals has failed to show that the bond was intended for its direct benefit, the judgment of the trial court is affirmed.
AFFIRMED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.