[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT LIBERTY MUTUAL'S MOTION FORSUMMARY JUDGMENT AND PLAINTIFF C M WAREHOUSE'S CROSS-MOTION FORSUMMARY JUDGEMENT
For purposes of the motions before the court this is breach of contract action in which the plaintiff, C M Warehouse Inc., seeks damages from the defendants, Eastern Trucking Co. and Liberty Mutual Insurance Co. On February 8, 1993, the plaintiff filed a four count complaint alleging the following facts. On May 9, 1990, Eastern submitted a bid proposal to the state for the purpose of receiving, loading and warehousing food donated to the State by the United States Department of Agriculture. Eastern's bid included subcontract proposals with C M and Condyne Freezer Co., not a party to this action, for the warehousing of this food. The bid conditions for the contract state, in relevant part state:
 16. Performance surety binding the Contractor faithfully to fulfill the obligations of his bid as accepted, may be required. Such surety in an amount up to one hundred (100) percent of each separate award, may be submitted in the form of CT Page 9820 a performance bond from a licensed surety company, certified check or irrevocable letter of credit from a Commercial Banking Institution.
On May 9, 1990, the State awarded the contract to Eastern.
The contract states, in relevant part:
 6.(b) The contractor shall furnish the state of Connecticut a surety bond for the faithful performance of the work hereunder in the amount of $250,000. Such surety bond shall be furnished prior to the commencement of the contract.
In response to this requirement, Eastern executed a "contract bond" with Liberty in favor of the State for $250,000.
Eastern subsequently defaulted on its payments to C M and Condyne. Condyne refused to tender performance until it received full payment. The State notified Liberty that Condyne failed to tender performance. Pursuant to its obligations under the contract bond, Liberty paid Condyne, to tender performance. C M tendered performance voluntarily. C M seeks to recover payment for receiving and storing the U.S.D.A. food from Eastern and Liberty as a surety for the payment of the subcontractors.
On February 8, 1994, Liberty filed a motion for summary judgment, together with affidavits and a memorandum of law in support of that motion. On April 22, 1994, C M filed a cross-motion for summary judgment, together with a memorandum of law in support of that cross-motion. On May 26, 1994, Liberty filed a reply memorandum in support of its motion for summary judgment and in opposition to the plaintiff's cross-motion for summary judgment. No issues of material fact exist and the case should be resolved on a motion for summary judgment.
I.
The resolution of this issue depends on whether the contract bond in this case is defined as a payment bond or a performance bond. These are two very different types of bond which have distinct functions. Statutory definitions CT Page 9821 set forth in § 32-55a set forth the following definitions:
 (2) Performance bond means a bond conditioned upon the completion by the principal of a contract in accordance with its terms.
 (3) Payment bond means a bond conditioned upon the payment by the principal of money due to persons under contract with the principal.
 (4) Surety means a person who. . . . (B) under the terms of a performance bond, undertakes to incur the cost of fulfilling the terms of a contract in the event the principal breaches the conditions of the contract; (C) under the terms of a payment bond undertakes to make payment to all persons supplying labor and material in the prosecution of the work provided for in the contract if the principal fails to make prompt payment.
The Restatement of the Law, Security defines the surety's obligations under a payment bond:
 § 165. Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons.
Under a performance bond the surety's obligations are much different:
 § 166. Where the surety guarantees the performance of a contract by a contractor who does not promise to pay those furnishing labor or material but agrees to complete the work free of liens or to furnish labor and material, laborers and materialmen (sic) have no rights against the surety. CT Page 9822
Or to put the matter more simply, a bond is held to be a payment bond rather than a performance bond if a court finds that the bond was intended and conditioned on benefiting third persons such as subcontractors, laborers and people who provide material. Such has to be the case since under contract law these third parties can bring suit as third party beneficiaries only if it is found that the bond was made for their benefit. Byram Lumber Supply v.Page, 109 Conn. 256, 260-261, see generally Contractors'Bonds, 17 Am.Jur.2d §§ 18-25 pp. 758 et seq.
What then is the process by which a court determines that a contract bond is a performance or a payment bond? Some cases indicate that the express terms of the surety agreement are to be examined, Montezuma Plumbing v. HousingAuthority, 651 P.2d 426, 428 (Colo. 1982). A more complete statement of the rule seems to be that the court should look at the bond in conjunction with the underlying contract, Daniel-Morris Co. v. Glen Falls Indemnity Co.,128 N.E.2d 750, 752 (N.Y., 1955), cf Byram Lumber Supplyv. Page, supra at p. 261, "surrounding circumstances" must at least be taken to mean the bond read in conjunction with function of the court in determining the type of bond:
 The general rule of construction to be used to determine whether a contract was intended for the benefit of persons other than the obligee is whether the contract shows an intent to protect such persons by agreeing to see that they are paid; the intention of the parties manifested in their agreement is controlling.
HNC Realty Co. v. Bay View Towers Apartments, 409 N.Y.S.2d 774,779 (1978).
A reading of the cases cited makes clear that the question is simply one of contract interpretation; no great public policy issues are marching behind the scenes which would require a court to do anything more than interpret what the parties meant to create in terms of a bond, as evidenced by the language they used in making an agreement.
In this case a contract bond was made under the terms of the contract with the State. In this contract bond Eastern Trucking Co., Inc. is the principal, Liberty Mutual CT Page 9823 is the surety, and the State of Connecticut is the obligee of the bond. The language bond refers to the underlying agreement between Eastern Trucking and the State for Eastern Trucking to perform work for the State. The language of the contract bond then explicitly states:
 NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that, if the Principal shall well and truly perform and carry out the covenants, terms and conditions of said agreement, then this obligation to be void: otherwise to remain in full force and effect.
The language of the bond makes no reference to subcontractors, laborers or people who furnish material. The contract bond had attached to it a power of attorney naming Kim DeVeaux as Liberty's agent to administer the bond on behalf of Liberty. The power of attorney document describes the contract bond as a "performance bond on behalf of Eastern Trucking in favor of the State of Connecticut."
The bid conditions of the contract talk of a "performance surety" (par. 15) and says that a "(16) Performance surety binding the contractor faithfully to fulfill the obligations of his (sic) bid as accepted, may be required." The contract between Eastern Trucking and the State says:
 6. (b) The contractor shall furnish the State of Connecticut a surety bond for the faithful performance of the work hereunder in the amount of $250,000. Such surety bond shall be furnished prior to the commencement of the contract.
"Payment bond" and "performance bond" are words of art used in this industry. It is very important to this industry that there be no confusion especially in the obligations sureties agree to assume. If the distinction between these two very different types of bonds were to be blurred by court decisions, then it would be difficult to secure people or companies to sign indemnification or surety agreements. There would be added confusion as to the rates contractors would have to pay sureties for the bonds if sureties could not know exactly the nature of the CT Page 9824 risk they were assuming.
It seems clear to the court that the explicit language of this contract bond read alone or in conjunction with the contract bid and actual contract require that this bond be defined as a performance bond. In fact it is difficult to imagine what other language the parties could have used to make it any clearer that a performance bond was intended.
In Byram Lumber Supply v. Page, supra, a claim by a supplier of materials was made on a bond which read as follows:
 . . . if the principal shall faithfully perform the contract on his (sic) part and satisfy all claims and demands incurred for the same and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default and shall pay all persons who have contracts directly with the principal for the labor and materials then this obligation shall be null and void, otherwise to remain in full force and effect.
109 Conn. page 258. As the defendant points out the court's analysis at pages 264-265 makes clear that the underlined language dictated that the bond in Byram should be considered a payment bond with a right to relief in the person who supplied material pursuant to contract. InRoyal Indemnity Co. v. Alexander Industries Inc.,211 A.2d 919 (Del., 1965) the court in deciding that a surety had a duty to the material supplier looked at the contract bond in conjunction with the underlying agreement. That agreement contained the following two articles:
 Article 3. Except as otherwise noted, the contractor shall provide and pay for all materials, labor, tools, water, power and other items necessary to complete the work.
 Article 10. Labor and material payment bond will be supplied by the contractor if the owner so CT Page 9825 desires. The cost of such bond shall be borne by the owner.
The contract bond made by the surety referred to the underlying agreement and in light of its language the supplier was held to have the rights of a third party beneficiary against the surety for labor and material.
Nothing in the language of the contract bond itself (Byram) or that language read in conjunction with the underlying agreement (Royal Indemnity) would require such a result here. A.J. Kellos Construction Co. Inc. v. BalboaIns. Co., 495 F. Sup. 408, 412 (S.D. Ga., 1980) cited by the plaintiff has little to do with the issues before the court. There was no dispute that a performance bond was involved in that case and the case really involved the right of the surety to bring a third party action against indemnitors.
The plaintiff also notes that the State bid proposal which is part of the "agreement" referred to in the contract bond contemplated that the principal, Eastern Trucking, would utilize subcontractors such as the plaintiff C M. In fact the latter's role was "critical" to Eastern's ability to perform the contract. All of these factors are givens in any construction contract. The point is to determine whether in light of these givens the surety agreed to enter into a payment bond for the benefit of subcontractors and suppliers. A.J. Kellos's general language defining a surety relationship and a surety's obligation provides no help in ascertaining the nature of the specific obligation assumed by the surety here.
There would be merit to the plaintiff's position that this was a payment bond if the bid conditions and the contract between Eastern and the State reflected an attempt by the State to impose on Eastern a duty to the State for the payment by Eastern of its subcontractors or material suppliers. Then the latter people or company would be third party beneficiaries and the contract bond, insofar as it incorporated any such agreement, could be defined as a payment bond.
In this regard the plaintiff refers to paragraph 10 of the special bid which is an addendum to the general CT Page 9826 Invitation to Bid which the court refers to as the underlying agreement. There the language is as follow:
 10. The Contractor (Eastern) shall furnish proof of payment due for all warehouse charges including dry, frozen and refrigerated warehousing and for cartage charges.
But this paragraph must be read in context and with reference to paragraphs 9 and 11. All these three paragraphs do is set up the method by which the State was to pay Eastern on a monthly basis. Significantly as the defendant Liberty Mutual notes paragraph 10 refers to "payments due" not payments made. This language cannot be read to give C M rights as a third party beneficiary against the surety.
II.
Finally the plaintiff argues that surety law does recognize the doctrine of estoppel. It argues that doctrine applies here because the surety, Liberty, in fact paid another subcontractor, Condyne Freezers. Having paid the latter company Liberty "is thereby estopped from denying liability to another legitimate surety bond claimant."
First the court does not believe, as previously discussed, there is a "legitimate surety bond claimant." Second estoppel has been defined as resting "on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." Jensen v. Nationwide Mutual Ins. Co., 158 Conn. 251,262. The party sought to be estopped must do or say something which is calculated or intended to make someone else believe certain things are true and act on that belief and the other party must thereby be injured Fawcett v. NewHaven Organ Co., 47 Conn. 224, 227 (1879). The payment to Condyne did not mislead the plaintiff or cause it to change its position in any way. Its right to proceed as a third party beneficiary is to be determined by an interpretation of the contract bond and the underlying contract not by a payment to another subcontractor long after these documents were executed. CT Page 9827
In any event in an affidavit attached to a reply brief submitted by the defendant a Liberty property loss examiner claims that Liberty paid the subcontractor so that the latter would release certain property the State claimed belonged to it. Condyne refused to release the material because it said it had not been paid by Eastern. Liberty Mutual's payment of the subcontractor could be characterized then as a way of fulfilling its obligation as surety to the State rather than a recognition of Condyne as a payment bond claimant.
For all of the above reasons the defendant Liberty Mutual's motion for summary judgment is granted and the plaintiff C M Warehouse's cross-motion for summary judgment is denied.
Corradino, J.